# Exhibit A

150th District Court

## Case Summary

### Case No. 2023CI08776

| | | | |
|---|---|---|---|
| **Pasha Iqbal ET AL VS State Farm Mutual Automobile Insurance Company ET AL** | § § § | Location: | **150th District Court** |
| | | Judicial Officer: | **150th, District Court** |
| | | Filed on: | **05/02/2023** |

---

## Case Information

| | |
|---|---|
| Case Type: | MOTOR VEHICLE ACCIDENT |
| Case Status: | **05/02/2023  Pending** |

---

## Assignment Information

**Current Case Assignment**

| | |
|---|---|
| Case Number | 2023CI08776 |
| Court | 150th District Court |
| Date Assigned | 05/02/2023 |
| Judicial Officer | 150th, District Court |

---

## Party Information

| | | *Lead Attorneys* |
|---|---|---|
| **Plaintiff** | Iqbal, Pasha | **BETTIS, R CRAIG** *Retained* |
| | Iqbal, Sara | **BETTIS, R CRAIG** *Retained* |
| **Defendant** | State Farm Mutual Automobile Insurance Company | **BROWN, MARGARET F** *Retained* |
| | State Farm, An Assumed or Common Name | |

---

## Events and Orders of the Court

| | |
|---|---|
| 05/02/2023 | New Cases Filed (OCA) |
| 05/02/2023 | PETITION |
| 05/02/2023 | REQUEST FOR SERVICE AND PROCESS |
| 05/05/2023 | **Citation** State Farm Mutual Automobile Insurance Company Unserved State Farm, An Assumed or Common Name Served: 05/15/2023 |
| 05/17/2023 | RETURN OF SERVICE - SUCCESSFUL *of State Farm , An Assumed or Common Name* |
| 05/26/2023 | ORIGINAL ANSWER OF *STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY* |



**State Farm Mutual Automobile Insurance Company**
PO Box 853919
Richardson, TX 75085-3919

| | **DECLARATIONS PAGE** |
|---|---|
| | **PAGE 1 OF 2** |

NAMED INSURED
AT1
       005486  0058        53-2120-2  P      A
IQBAL, PASHA M & SARA P &
IQBAL,

| POLICY NUMBER | 262 6683-C05-53O |
|---|---|
| POLICY PERIOD<br>12 01 A.M. Standard Time | APR 25 2020 to SEP 05 2020 |

PHONE: (210)670-0000

**DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.**
**IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.**

### YOUR CAR

| VEHICLE | YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|---|---|---|---|---|---|---|
| 3 | 2016 | DODGE | CARAVAN | VAN | 2C4RDGBG8GR227323 | 603F02F000 |

| SYMBOLS | COVERAGE & LIMITS | PREMIUMS |
|---|---|---|
| A | Liability Coverage | |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $50,000        $100,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $50,000 | |
| P | Personal Injury Protection Coverage | |
| | Limit - Each Person | |
| | $2,500 | |
| D | Comprehensive Coverage   $250 Deductible | |
| G | Collision Coverage - $250 Deductible | |
| H | Emergency Road Service Coverage | |
| R1 | Car Rental and Travel Expenses Coverage | |
| | Limit - Car Rental Expense | |
| | Each Day,    Each Loss | |
| | $50          $1,200 | |
| U | Uninsured/Underinsured Motorists Coverage | |
| | Bodily Injury Limits | |
| | Each Person,   Each Accident | |
| | $50,000        $100,000 | |
| | Property Damage Limit | |
| | Each Accident | |
| | $50,000 | |

This is not a bill.

CONTINUED

See Reverse Side

ST-8
0102-0016

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Mutuals - Membership and Voting Notice.** The insured is notified that by virtue of this policy, he is a member of the State Farm Mutual Automobile Insurance Company of Bloomington, Illinois, and is entitled to vote either in person or by proxy at any and all meetings of said company. The annual meetings are held in its home office, at Bloomington, Illinois, on the second Monday of June, in each year, at 10:00 o'clock A.M.

2. **Mutuals - Participation Clause Without Contingent Liability.** No Contingent Liability: This policy is nonassessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be executed and attested.

SECRETARY                                    PRESIDENT

**State Farm Mutual Automobile Insurance Company**
PO Box 853919
Richardson, TX 75085-3919



| | **DECLARATIONS PAGE** |
|---|---|
| | **PAGE 2 OF 2** |

NAMED INSURED   005486  0058
IQBAL,  PASHA  M  &  SARA  P  &

53-2120-2  P        A

| POLICY NUMBER | 262 6683-C05-53O |
|---|---|
| POLICY PERIOD | APR 25 2020 to SEP 05 2020 |
| | 12 01 A.M. Standard Time |

ST-B
0202-0016

---

## IMPORTANT MESSAGES

**INSURANCE WEBSITE NOTICE**
To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/Office of Public Insurance Counsel website:

**www.helpinsure.com.**

**AVISO DEL SITIO WEB DE SEGUROS**
Para obtener formas para la comparación de precios y póliza y para obtener otra información sobre el seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com.**

The Auto(s) or Trailer(s) described in this policy is principally garaged at the address shown unless otherwise stated.

State Farm works hard to offer you the best combination of price, service, and protection.   The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports including credit history.

You have the right to request, no more than once during a 12-month period, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

## EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details.)

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9843A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.

(210)670-0000

APR 30 2020

2120-B58

03873/05277
I3MX0          (o1a025vd)          (o1a0254c)

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Mutuals - Membership and Voting Notice.** The insured is notified that by
   virtue of this policy, he is a member of the State Farm Mutual Automobile Insurance
   Company of Bloomington, Illinois, and is entitled to vote either in person or by proxy at
   any and all meetings of said company. The annual meetings are held in its home office,
   at Bloomington, Illinois, on the second Monday of June, in each year, at 10:00 o'clock A.M.

2. **Mutuals - Participation Clause Without Contingent Liability.** No Contingent Liability: This
   policy is nonassessable. The policyholder is a member of the company and shall participate, to the
   extent and upon the conditions fixed and determined by the Board of Directors in accordance with
   the provisions of law, in the distribution of dividends so fixed and determined.

   In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy
   to be executed and attested.

*Lynne M. Yawell*
SECRETARY

*Michael F. Tipsord*
PRESIDENT

B10



State Farm®
**Personal Car Policy**
Booklet

**Texas**
Policy Form 9843A

**IMPORTANT NOTICE**

To obtain information or make a complaint:

You may contact your agent at the telephone number displayed on your Texas Liability Insurance Card.

You may call State Farm's toll-free telephone number for information or to make a complaint at:

**800-STATE-FARM**
**(800-782-8332)**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104

Austin, TX 78714-9104

Fax: (512) 490-1007

Web: www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/Office of Public Insurance Counsel website:

**www.helpinsure.com**

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

**AVISO IMPORTANTE**

Para obtener información o para presentar una queja:

Usted puede comunicarse con su agente al número de teléfono que aparece en su Tarjeta de Seguro de Responsabilidad de Texas.

Usted puede llamar al número de teléfono gratuito de State Farm para obtener información o para presentar una queja al:

**800-STATE-FARM**
**(800-782-8332)**

Usted puede comunicarse con el Departamento de Seguros de Texas para obtener información sobre compañías, coberturas, derechos o quejas al:

**1-800-252-3439**

Usted puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104

Austin, TX 78714-9104

Fax: (512) 490-1007

Web: www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

Para obtener formas para la comparación de precios y pólizas y para obtener otra información sobre el seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com**

**DISPUTAS POR PRIMAS DE SEGUROS O RECLAMACIONES:** Si tiene una disputa relacionada con su prima de seguro o con una reclamación, usted debe comunicarse con el agente primero. Si la disputa no es resuelta, puede comunicarse con el Departamento de Seguros de Texas.

**ADJUNTE ESTE AVISO A SU PÓLIZA:** Este aviso es solamente para propósito de informativos y no se convierte en parte o en condición del documento adjunto.

# CONTENTS

**THIS POLICY** ...................................................... 6

**DEFINITIONS** ..................................................... 7

**LIABILITY COVERAGE** ......................... 9

Additional Definition ................................. 10
Insuring Agreement ................................... 10
Supplementary Payments ........................... 10
Limits ......................................................... 11
Nonduplication .......................................... 11
Exclusions ................................................. 12
If Other Liability Coverage Applies ......... 13
Required Out-of-State Liability Coverage 14
Financial Responsibility Certification ....... 14

**PERSONAL INJURY PROTECTION COVERAGE** .............................................. 15

Additional Definitions ............................... 15
Insuring Agreement ................................... 15
Limit ........................................................... 15
Exclusions ................................................. 16
If Other Personal Injury Protection Coverage Applies ...................................... 16
Our Payment Options ................................ 17

**MEDICAL PAYMENTS COVERAGE** ..... 17

Additional Definitions ............................... 17
Insuring Agreement ................................... 18
Determining Medical Expenses ................. 18
Limit ........................................................... 19
Nonduplication .......................................... 19
Exclusions ................................................. 19
If Other Medical Payments Coverage or Similar Vehicle Insurance Applies ........... 20
Our Payment Options ................................ 21

**UNINSURED/UNDERINSURED MOTORISTS COVERAGE** ......................... 22

Additional Definitions ............................... 22
Insuring Agreement ................................... 23
Consent to Settlement ............................... 23
Deciding Fault and Amount ...................... 23

Limits ......................................................... 24
Nonduplication .......................................... 24
Exclusions ................................................. 25
If Other Uninsured/Underinsured Motorists Coverage Applies ..................... 26
Our Payment Options ................................ 27

**PHYSICAL DAMAGE COVERAGES** .... 27

Deductible ................................................. 27
Additional Definitions ............................... 27
Insuring Agreements ................................. 28
Supplementary Payments – Comprehensive Coverage and Collision Coverage ............. 30
Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage .............. 31
Limits – Car Rental and Travel Expenses Coverage ................................................... 32
Nonduplication .......................................... 32
Exclusions ................................................. 33
If Other Physical Damage Coverage or Similar Coverage Applies .......................... 35
Financed Vehicle ....................................... 35
Our Payment Options ................................ 35

**DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE** ................ 36

Additional Definition ................................. 36
Insuring Agreement ................................... 36
Benefit ....................................................... 36
Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage ..................................... 37
Our Payment Options– Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage ... 38

**LOSS OF EARNINGS COVERAGE** ........ 37

Additional Definitions ............................... 37
Insuring Agreement ................................... 37

Limit..................................................37

Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage ...................................37

Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage ....38

**INSURED'S DUTIES**................................39

Notice to Us of an Accident or Loss .........39

Notice to Us of a Claim or Lawsuit ..........39

Insured's Duty to Cooperate With Us .......39

Questioning Under Oath ...........................39

Other Duties Under the Physical Damage Coverages ...................................39

Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured/Underinsured Motorists Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage.......................................40

**GENERAL TERMS**....................................41

When Coverage Applies.............................41

Where Coverage Applies............................41

Limited Coverage in Mexico......................41

Newly Owned or Newly Leased Car.........42

Changes to This Policy..............................43

Premium.....................................................44

Renewal......................................................44

Nonrenewal ................................................44

Cancellation................................................45

Assignment.................................................45

Bankruptcy or Insolvency of the Insured ..45

Concealment or Fraud ...............................45

Our Right to Recover Our Payments.........46

Legal Action Against Us ...........................46

Choice of Law ...........................................47

Severability.................................................47

Electronic Delivery ...................................47

Notice of a Claim ......................................47

## THIS POLICY

1.  This policy consists of:

    a.  the most recently issued Declarations Page;

    b.  the policy booklet version shown on that Declarations Page; and

    c.  any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2.  This policy contains all of the agreements between all named insureds who are shown on the Declarations Page and **us**. No other agreements apply to this insurance.

3.  **We** agree to provide insurance according to the terms of this policy based on payment of premium for the coverages chosen.

4.  **Your** purchase of this policy may allow:

    a.  **you** to purchase or obtain, on the same terms and conditions as other policyholders similarly situated and of similar risk, certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies**, subject to their applicable eligibility rules; or

    b.  the premium or price for other products or services purchased by **you**, including non-insurance products or services, to vary. Such other products or services must be provided by the

*State Farm Companies* or by a legal entity that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that legal entity.

## DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Business Day* means a day other than a Saturday, Sunday, or holiday recognized by the State of Texas.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. *Car* does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Employee* includes a worker leased to *you* by a labor leasing firm, employee leasing company, employment-type agency, or any similar staffing service organization.

*Employee* does not include a worker leased to *you* by a labor leasing firm, employee leasing company, employment-type agency, or any similar staffing service organization to:

1. substitute for a permanent *employee* on leave;

2. meet the seasonal demands of *your* business; or

3. fulfill *your* short-term workload conditions.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

    a. Mycotoxins;

    b. Spores;

    c. Scents; or

    d. Byproducts.

*Newly Acquired Car* means a *private passenger car* newly *owned by you* or a *resident relative*. If the *private passenger car* is newly *owned by*:

1. *you*, it ceases to be a *newly acquired car* for:

    a. Comprehensive Coverage and Collision Coverage on the end of the 20th calendar day immediately following the date the *private passenger car* is delivered to *you*; and

    b. coverages, other than Comprehensive Coverage and Collision Coverage, on:

        (1) the end of the 20th calendar day immediately following the date the *private passenger car* is delivered to *you* if it is in addition to the *cars* shown on the Declarations Page under "YOUR CAR"; or

        (2) the end of the policy period during which the *private passenger car* is delivered to *you* if it replaces a *car* shown on the Declarations Page under "YOUR CAR". However, if this is a renewal policy and the *private passenger car* was acquired within 20 days of the end of

7
9843A

the previous policy period, it will cease to be a *newly acquired car* at the end or the 20th calendar day immediately following the date it is delivered to *you*.

2. a *resident relative*, it ceases to be a *newly acquired car* at the end of the 20th calendar day immediately following the date it is delivered to the *resident relative*.

The broadest coverage provided by this policy for any *car* shown on the Declarations Page under "YOUR CAR" will apply to a *newly acquired car*. If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500.

Refer to **Newly Owned or Newly Leased Car** of **GENERAL TERMS** if *you* or a *resident relative* want to insure a *private passenger car* with the *State Farm Companies* after it ceases to be a *newly acquired car*.

*Non-Owned Car* means a *car* that:

1. is in the lawful possession of *you* or any *resident relative*;

2. is not *owned by*:

  a. *you*;

  b. any *resident relative*;

  c. any other *person* who resides in *your* household; or

  d. an employer of any *person* described in a., b., or c. above; and

3. has not been operated by, rented by, or in the possession of:

  a. *you*; or

  b. any *resident relative*

  for more than 30 consecutive calendar days immediately prior to the date of the accident or *loss*. Operation, rental, or possession for any part of a day constitutes a calendar day.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, or utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, or utility vehicle that:

  a. is not used primarily for:

    (1) wholesale; or

    (2) retail

    pickup or delivery other than farming or ranching; and

  b. that has a Gross Vehicle Weight Rating of 25,000 pounds or less.

*Resident Relative* means a *person*, other than *you*, who resides with a *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or that named insured's *spouse* by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her residence with that named insured; or

2.  a ward or a foster child of that named insured, that named insured's *spouse*, or a *person* described in 1. above.

***Resident relative*** also includes a ***person*** who is legally married to a named insured during a period of separation in contemplation of divorce.

***Spouse*** means a ***person*** who is:

1.  legally married to a ***person*** shown as a named insured on the Declarations Page; and

2.  domiciled in the same household as that named insured.

***State Farm Companies*** means one or more of the following:

1.  State Farm Mutual Automobile Insurance Company;

2.  State Farm Fire and Casualty Company;

3.  State Farm County Mutual Insurance Company of Texas;

4.  State Farm Lloyds; and

5.  Subsidiaries or affiliates of any of the companies above.

***Temporary Substitute Car*** means a *car* that is in the lawful possession of the ***person*** operating it and that:

1.  replaces ***your car*** for a short time while ***your car*** is out of use due to its:

    a.  breakdown;

    b.  repair;

    c.  servicing;

    d.  damage; or

    e.  theft; and

2.  neither ***you*** nor the ***person*** operating it own or have registered.

If a ***car*** qualifies as both a ***non-owned car*** and a ***temporary substitute car***, then it is considered a ***temporary substitute car*** only.

***Trailer*** means:

1.  a trailer:

    a.  designed to be pulled by a ***private passenger car***;

    b.  not designed to carry ***persons***; and

    c.  while not used as premises for office, store, or display purposes; or

2.  a farm implement or farm wagon while being pulled on public roads by a ***car***.

***Us*** means the Company issuing this policy as shown on the Declarations Page.

***We*** means the Company issuing this policy as shown on the Declarations Page.

***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes a *spouse*.

***Your Car*** means a vehicle shown under "YOUR CAR" on the Declarations Page. ***Your Car*** does not include a vehicle that *you* no longer own or lease.

If a ***car*** is shown on the Declarations Page under "YOUR CAR", and ***you*** ask ***us*** to replace it with a ***car*** newly ***owned by you***, then the ***car*** being replaced will continue to be considered ***your car*** until the earliest of:

1.  the end of the 30th calendar day immediately following the date the ***car*** newly ***owned by you*** is delivered to ***you***;

2.  the date this policy is no longer in force; or

3.  the date ***you*** no longer own or lease the ***car*** being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage to the vehicles for which Symbol "A" and a corresponding premium are shown on the Declarations Page.

**Additional Definition**

*Insured* means:

1. *you* and *resident relatives* for:

    a. the ownership, maintenance, or use of:

        (1) *your car*;

        (2) a *newly acquired car*; or

        (3) a *trailer*; and

    b. the maintenance or use of:

        (1) a *non-owned car*; or

        (2) a *temporary substitute car*;

2. a *person* shown as a named insured on the Declarations Page and that named insured's *spouse* for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides in that named insured's household, but only if such *car* is neither *owned by*, nor furnished by an employer to, that named insured or that named insured's *spouse*;

3. any other *person* for his or her use of:

    a. *your car*;

    b. a *newly acquired car*;

    c. a *temporary substitute car*; or

    d. a *trailer* while attached to a *car* described in a., b., or c. above.

    Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or legal entity legally liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for acts or omissions of an *insured* as defined in 1., 2., or 3. above.  This provision applies only if the vehicle is:

    a. neither *owned by*, nor hired by, that other *person* or legal entity; and

    b. not being used:

        (1) to carry *persons* for a charge; or

        (2) by an *insured* while logged on as a driver to a ride sharing or car sharing application.

*Insured* does not include the United States of America or any of the Federal Government's departments or agencies.

**Insuring Agreement**

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

    a. *bodily injury* to others; and

    b. damage to property, including the loss of use of such property

    caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

    a. investigate, negotiate, and settle any claim or lawsuit;

    b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

    c. appeal any award or legal decision

    for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages described in the **Insuring Agreement** of this policy's Liability Coverage, those items listed below that result from such accident.  Supplementary payments are not subject to this policy's Liability Coverage limits:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

    a. that seeks damages payable under this policy's Liability Coverage; and

    b. against which *we* defend an *insured* with attorneys chosen by *us*.

10
9843A

*We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the **Insuring Agreement** of this policy's Liability Coverage;

3. Interest the *insured* is legally liable to pay on damages payable under the **Insuring Agreement** of this policy's Liability Coverage:

   a. before a judgment, but only the interest on the lesser of:

      (1) that part of the damages *we* pay; or

      (2) this policy's applicable Liability Coverage limit; and

   b. after a judgment.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

   a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

   b. furnish or apply for any bonds; or

   c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the **Insuring Agreement** of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b. Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for ***bodily injury*** are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from ***bodily injury*** to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that ***bodily injury***. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from ***bodily injury*** to two or more *persons* injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. ***insureds***;

2. claims made;

3. vehicles insured;

4. premiums shown on the Declarations Page; or

5. vehicles involved in the accident.

**Nonduplication**

*We* will not pay any damages or expenses under Liability Coverage:

1. that have already been paid under Personal Injury Protection Coverage of any policy issued by the **State Farm Companies** to *you* or any ***resident relative***;

2. that have already been paid as expenses under Medical Payments Coverage of any policy issued by the **State Farm Companies** to **you** or any **resident relative**; or

3. that have already been paid under Uninsured/Underinsured Motorists Coverage of any policy issued by the **State Farm Companies** to **you** or any **resident relative**.

**Exclusions**

THERE IS NO COVERAGE FOR AN **INSURED**:

1. WHO INTENTIONALLY CAUSES **BODILY INJURY** OR DAMAGE TO PROPERTY;

2. FOR **BODILY INJURY** TO:

   a. **YOU**;

   b. **RESIDENT RELATIVES**; AND

   c. ANY OTHER **PERSON** WHO BOTH RESIDES WITH AN **INSURED** AND WHO:

      (1) IS RELATED TO THAT **INSURED** BY BLOOD, MARRIAGE, OR ADOPTION; OR

      (2) IS A WARD OR FOSTER CHILD OF THAT **INSURED**.

   This exclusion applies only to the amount that this coverage exceeds the minimum limits of liability required by law;

3. OR FOR THAT **INSURED'S** INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSATION, DISABILITY, OR SIMILAR LAW;

4. FOR **BODILY INJURY** TO THAT **INSURED'S EMPLOYEE** WHICH ARISES OUT OF THAT **EMPLOYEE'S** EMPLOYMENT. This exclusion does not apply to that **insured's** household **employee** who is neither covered, nor required to be covered, under workers' compensation insurance;

5. FOR **BODILY INJURY** TO THAT **INSURED'S** FELLOW **EMPLOYEE** WHILE THE FELLOW **EMPLOYEE** IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclusion does not apply to:

   a. **you** and **resident relatives** who are legally liable for **bodily injury** to fellow **employees**; or

   b. that **insured's** household **employee** who is neither covered, nor required to be covered, under workers' compensation insurance;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN **INSURED**;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE:

   a. DURING THE PERIOD OF TIME AN **INSURED**, WHILE LOGGED ON TO A TRANSPORTATION NETWORK COMPANY'S DIGITAL NETWORK AS A DRIVER, IS A DRIVER OF THAT VEHICLE; OR

   b. WHILE IT IS BEING USED TO CARRY **PERSONS** FOR A CHARGE. This exclusion (7.b.) does not apply to the use of a **private passenger car** on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT **INSURED'S** EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A **CAR BUSINESS**. This exclusion does not apply to:

   a. **you**;

   b. any **resident relative**; or

   c. any agent, **employee**, or business partner of a. or b. above

   while maintaining or using **your car**, a **newly acquired car**, a **temporary substitute car**, or a **trailer owned by you**;

9. WHILE THAT **INSURED** IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPORARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OCCUPATION OTHER THAN A *CAR BUSINESS* OR VALET PARKING. This exclusion does not apply to the maintenance or use of a *private passenger car*;

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

   a. *OWNED BY*;

   b. RENTED TO;

   c. USED BY;

   d. IN THE CARE OF; OR

   e. TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to damage to a:

   a. motor vehicle *owned by* the employer of *you* or the employer of any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

   b. residence while rented to or leased to an *insured*; or

   c. private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION. This exclusion does not apply to the extent Liability Coverage would apply in the absence of the order of restitution;

14. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

   a. OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (15.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving; OR

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF THE FEDERAL GOVERNMENT'S DEPARTMENTS OR AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

**If Other Liability Coverage Applies**

1. If Liability Coverage provided by this policy and one or more other vehicle policies issued to *you* by *us* apply to the same accident, then:

   a. the Liability Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a. If:

(1) this is the only vehicle policy issued to *you* by *us* that provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than *us* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to *you* by *us* provides Liability Coverage which applies to the accident as primary coverage; and

(2) liability coverage provided by one or more sources other than *us* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that the maximum amount that may be paid by *us* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you* by *us* that provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than *us* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* by *us* provides Liability Coverage which applies to the accident as excess coverage; and

(2) liability coverage provided by one or more sources other than *us* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable  as excess that the maximum amount that may be paid by *us* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

## Required Out-of-State Liability Coverage

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

## Financial Responsibility Certification

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

14
9843A

## PERSONAL INJURY PROTECTION COVERAGE

This policy provides Personal Injury Protection Coverage to the vehicles for which Symbol "P" and a corresponding premium is shown on the Declarations Page.

**Additional Definitions**

***Essential Services*** mean services that replace services an ***insured*** would have ordinarily performed:

1. without pay;

2. during the period of disability; and

3. for the care and maintenance of the family or household.

***Insured*** means:

1. ***you*** and ***resident relatives***; and

2. any other ***person*** while ***occupying***:

   a. ***your car***;

   b. a ***newly acquired car***;

   c. a ***temporary substitute car***; or

   d. a ***trailer***:

      (1) ***owned by you***; or

      (2) while attached to a ***car*** described in a., b., or c. above.

   Such vehicle must be used within the scope of ***your*** consent.

***Loss of Income*** means the difference between:

1. income which would have been earned had the ***insured*** not been injured; and

2. the amount of income actually received from employment during the period of disability.

If the income being earned as of the date of accident is a salary or fixed remuneration, it shall be used in determining the amount of income which would have been earned. Otherwise, the average monthly income earned during the period (not more than 12 months) preceding the accident shall be used.

***Personal Injury Protection Benefits*** mean:

1. Reasonable expenses incurred for necessary medical and funeral services; and

2. Eighty percent of an ***insured's loss of income*** from employment. These benefits:

   a. apply only if, at the time of the accident, the ***insured***:

      (1) was an income producer; and

      (2) was in an occupational status.

   b. do not apply to any ***loss of income*** after the ***insured*** dies; or

3. Reasonable expenses incurred for ***essential services***.

   These benefits:

   a. apply only if, at the time of the accident, the ***insured***:

      (1) was not an income producer; and

      (2) was not in an occupational status.

   b. do not apply to any expenses incurred after the ***insured*** dies.

**Insuring Agreement**

***We*** will pay ***personal injury protection benefits*** because of ***bodily injury***:

1. sustained by an ***insured***; and

2. caused by an accident involving a motor vehicle which is designed for use primarily on public roads.

***Our*** payment will only be for losses or expenses incurred within three years immediately following the date of the accident. Benefits are payable not more frequently than every two weeks and within 30 days after satisfactory proof of claim is received.

**Limit**

The Personal Injury Protection Coverage limit is shown on the Declarations Page under "Personal Injury Protection – Limit – Each Person". This limit is the most ***we*** will pay for ***personal injury protection benefits*** for any one ***insured*** as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured;

4. premiums shown on the Declarations Page; or

5. vehicles involved in the accident.

**Exclusions**

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO SUSTAINS *BODILY INJURY* IN AN INCIDENT INTENTIONALLY CAUSED BY THAT *INSURED*;

2. WHILE THAT *INSURED* IS COMMITTING A FELONY;

3. WHILE THAT *INSURED* IS ATTEMPTING TO ELUDE ARREST BY A LAW ENFORCEMENT OFFICIAL;

4. WHILE *OCCUPYING*, OR WHEN STRUCK BY, ANY MOTOR VEHICLE *OWNED BY YOU*. This exclusion does not apply while *occupying*, or when struck by *your car*, a *newly acquired car*, or a *trailer*;

5. WHILE *OCCUPYING*, OR WHEN STRUCK BY, ANY MOTOR VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE*. This exclusion does not apply:

   a. while *occupying*, or when struck by *your car*, a *newly acquired car*, or a *trailer*; and

   b. to *you*, provided that the motor vehicle is not *owned by you*; OR

6. WHO IS *OCCUPYING* A VEHICLE DURING THE PERIOD OF TIME AN *INSURED*, WHILE LOGGED ON TO A TRANSPORTATION NETWORK COMPANY'S DIGITAL NETWORK AS A DRIVER, IS A DRIVER OF THAT VEHICLE.

**If Other Personal Injury Protection Coverage Applies**

1. If Personal Injury Protection Coverage provided by this policy and one or more other vehicle policies issued to *you* by *us* apply to the same *bodily injury*, then:

   a. the Personal Injury Protection Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Personal Injury Protection Coverage provided by this policy applies as primary coverage except for *bodily injury* sustained by an *insured* while *occupying* a vehicle not *owned by you*.

   a. If:

      (1) this is the only vehicle policy issued to *you* by *us* that provides Personal Injury Protection Coverage which applies to the accident as primary coverage; and

      (2) personal injury protection coverage provided by one or more sources other than *us* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of *personal injury protection benefits* payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* by *us* provides Personal Injury Protection Coverage which applies to the accident as primary coverage; and

      (2) personal injury protection coverage provided by one or more sources other than *us* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *personal injury protection benefits* payable as primary that the maximum amount that may be paid by *us* as determined in 1. above bears to the sum of such amount and the limits of all other personal injury protection coverage that apply as primary coverage.

3. The Personal Injury Protection Coverage provided by this policy applies as excess coverage for *bodily injury* sustained by an *insured* while *occupying* a vehicle not *owned by you*.

   a. If:

      (1) this is the only vehicle policy issued to *you* by *us* that provides Personal Injury Protection Coverage which applies to the accident as excess coverage; and

      (2) personal injury protection coverage provided by one or more sources other than *us* also applies as excess coverage for the same accident,

      then *we* will pay the proportion of *personal injury protection benefits* payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other personal injury protection coverage that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* by *us* provides Personal Injury Protection Coverage

which applies to the accident as excess coverage; or

(2) personal injury protection coverage provided by one or more sources other than *us* also applies as excess coverage for the same accident,

then *we* will pay the proportion of *personal injury protection benefits* payable as excess that the maximum amount that may be paid by *us* as determined in 1. above bears to the sum of such amount and the limits of all other personal injury protection coverage that apply as excess coverage.

**Our Payment Options**

Payment for medical expenses will be paid directly to a physician or other health care provider if *we* receive a written assignment signed by the *insured* to whom such benefits are payable. Otherwise, *we* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4. A *person* authorized by law to receive such payment unless directed otherwise by the *insured*; or

5. Any *person* or legal entity that provides the medical or funeral services unless directed otherwise by the *insured*.

## MEDICAL PAYMENTS COVERAGE

This policy provides Medical Payments Coverage to the vehicles for which Symbol "C" and a corresponding premium are shown on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you* and *resident relatives*:

   a. while *occupying*:

      (1) *your car*;

      (2) a *newly acquired car*;

      (3) a *temporary substitute car*;

(4) a **non-owned car**; or

(5) a **trailer** while attached to a **car** described in (1), (2), (3), or (4) above; or

b. if struck as a **pedestrian** by a motor vehicle or any type of trailer; and

2. any other **person** while **occupying**:

a. **your car**;

b. a **newly acquired car**;

c. a **temporary substitute car**; or

d. a **trailer** while attached to a **car** described in a., b., or c. above.

Such vehicle must be used within the scope of **your** consent.

**Medical Expenses** mean **reasonable expenses** for **medical services**.

**Medical Services** mean treatments, procedures, products, and other services that are:

1. necessary to achieve maximum medical improvement for the **bodily injury**;

2. rendered by a healthcare provider:

a. who is licensed as a healthcare provider if a license is required by law; and

b. within the legally authorized scope of that healthcare provider's practice;

3. commonly and customarily recognized throughout the medical profession and within the United States of America as appropriate for the treatment of the **bodily injury**;

4. primarily designed to serve a medical purpose;

5. not experimental; and

6. not for research purposes.

**Reasonable Expenses** mean the lowest one of the following charges:

1. The usual and customary fees charged by a majority of healthcare providers who provide similar **medical services** in the geographical area in which the charges were incurred;

2. The fee specified in any fee schedule:

a. applicable to medical payments coverage, no-fault coverage, or personal injury protection coverage included in motor vehicle liability policies issued in the state where **medical services** are provided; and

b. as prescribed or authorized by the law of the state where **medical services** are provided;

3. The fees agreed to by both the **insured's** healthcare provider and **us**; or

4. The fees agreed upon between the **insured's** healthcare provider and a third party when **we** have a contract with such third party.

**Insuring Agreement**

**We** will pay:

1. **medical expenses** incurred because of **bodily injury** that is sustained by an **insured** and caused by a motor vehicle accident if:

a. that **insured** is first provided **medical services** within one year immediately following the date of the accident; and

b. such **medical expenses** are for **medical services** that are provided within three years immediately following the date of the accident; and

2. funeral expenses incurred for an **insured** who dies within three years immediately following the date of a motor vehicle accident if the death is a direct result of **bodily injury** sustained in such accident.

**Determining Medical Expenses**

**We** have the right to:

1. obtain and use:

a. utilization reviews;

b. peer reviews; and

c. medical bill reviews

to determine if the incurred charges are **medical expenses**;

2. use a medical examination of the *insured* to determine if:

    a. the *bodily injury* was caused by a motor vehicle accident; and

    b. the expenses incurred are *medical expenses*; and

3. enter into a contract with a third party that has an agreement with the *insured's* healthcare provider to charge fees as determined by that agreement.

### Limit

The Medical Payments Coverage limit is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person". This limit is the most *we* will pay for the *medical expenses* and funeral expenses combined, incurred by or on behalf of any one *insured* as a result of any one accident, regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured;

4. premiums shown on the Declarations Page; or

5. vehicles involved in the accident.

Subject to the limit shown on the Declarations Page, the most *we* will pay for funeral expenses incurred for any one *insured* is $3,000.

### Nonduplication

*We* will not pay any *medical expenses* or funeral expenses under Medical Payments Coverage that have already been paid:

1. as damages under Liability Coverage or Uninsured/Underinsured Motorists Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

2. under Personal Injury Protection Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or

3. by or on behalf of a party who is legally liable for the *insured's bodily injury*.

### Exclusions

THERE IS NO COVERAGE FOR AN *INSURED*:

1. WHO IS STRUCK AS A *PEDESTRIAN* BY A MOTOR VEHICLE, *OWNED BY* THAT *INSURED* OR *YOU*, IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

2. IF ANY WORKERS' COMPENSATION LAW OR ANY SIMILAR LAW APPLIES TO THAT *INSURED'S BODILY INJURY*;

3. WHO IS *OCCUPYING* A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

4. WHO IS *OCCUPYING* A VEHICLE:

    a. DURING THE PERIOD OF TIME AN *INSURED*, WHILE LOGGED ON TO A TRANSPORTATION NETWORK COMPANY'S DIGITAL NETWORK AS A DRIVER, IS A DRIVER OF THAT VEHICLE; OR

    b. WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion (4.b.) does not apply to:

        (1) the use of a *private passenger car* on a share-the-expense basis; or

        (2) an *insured* while *occupying* a *non-owned car* as a passenger;

5. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

    a. *you*;

    b. any *resident relative*; or

    c. any agent, *employee*, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

6. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

19

9843A

7. WHILE MAINTAINING OR USING A ***NON-OWNED CAR*** IN ANY BUSINESS OR OCCUPATION OTHER THAN A ***CAR BUSINESS*** OR VALET PARKING. This exclusion does not apply to the maintenance or use of a ***private passenger car***;

8. WHO IS EITHER ***OCCUPYING*** OR STRUCK AS A ***PEDESTRIAN*** BY A VEHICLE THAT IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES;

9. WHO IS STRUCK AS A ***PEDESTRIAN*** BY A VEHICLE THAT:

   a. IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

   b. RUNS ON RAILS OR CRAWLER-TREADS;

10. WHOSE ***BODILY INJURY*** RESULTS FROM WAR OF ANY KIND;

11. WHOSE ***BODILY INJURY*** RESULTS FROM:

    a. NUCLEAR REACTION;

    b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

    c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

12. WHOSE ***BODILY INJURY*** RESULTS FROM THE DISCHARGE OF A FIRE-ARM;

13. WHOSE ***BODILY INJURY*** RESULTS FROM EXPOSURE TO ***FUNGI***; OR

14. WHO IS ***OCCUPYING*** A VEHICLE WHILE IT IS:

    a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

    b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (14.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Medical Payments Coverage or Similar Vehicle Insurance Applies**

1. An ***insured*** shall not recover for the same ***medical expenses*** or funeral expenses under both this coverage and other medical payments coverage, personal injury protection coverage, or similar vehicle insurance.

2. If Medical Payments Coverage provided by this policy and one or more other vehicle policies issued to ***you*** by ***us*** apply to the same ***bodily injury***, then:

   a. the Medical Payments Coverage limits of such policies shall not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. ***We*** may choose one or more policies from which to make payment.

3. The Medical Payments Coverage provided by this policy applies as primary coverage for an ***insured*** who sustains ***bodily injury*** while ***occupying your car*** or a ***trailer*** attached to it.

   a. If:

      (1) this is the only vehicle policy issued to ***you*** by ***us*** that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

      (2) medical payments coverage or other similar vehicle insurance provided by one or more sources

other than *us* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

b. If:

(1) more than one vehicle policy issued to *you* by *us* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as primary coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than *us* also applies as primary coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as primary that the maximum amount that may be paid by *us* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as primary coverage.

4. Except as provided in 3. above, the Medical Payments Coverage provided by this policy applies as excess coverage.

a. If:

(1) this is the only vehicle policy issued to *you* by *us* that provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources

other than *us* also applies as excess coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

b. If:

(1) more than one vehicle policy issued to *you* by *us* provides Medical Payments Coverage or other similar vehicle insurance which applies to the accident as excess coverage; and

(2) medical payments coverage or other similar vehicle insurance provided by one or more sources other than *us* also applies as excess coverage for the same accident,

then *we* will pay the proportion of *medical expenses* and funeral expenses payable as excess that the maximum amount that may be paid by *us* as determined in 2. above bears to the sum of such amount and the limits of all other medical payments coverage or similar vehicle insurance that apply as excess coverage.

**Our Payment Options**

Payment for *medical expenses* will be paid directly to a physician or other health care provider if *we* receive a written assignment signed by the *insured* to whom such benefits are payable. Otherwise, *we* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*;

4.  A *person* authorized by law to receive such payment unless directed otherwise by the *insured*; or

5.  Any *person* or legal entity that provides the *medical services* or funeral services unless directed otherwise by the *insured*.

## UNINSURED/UNDERINSURED MOTORISTS COVERAGE

This policy provides Uninsured/Underinsured Motorists Coverage to the vehicles for which Symbol "U" and a corresponding premium are shown on the Declarations Page.

**Additional Definitions**

*Insured* means:

1.  *you*;

2.  *resident relatives*;

3.  any other *person* while *occupying*:

    a.  *your car*;

    b.  a *newly acquired car*; or

    c.  a *temporary substitute car*.

    Such vehicle must be used within the scope of *your* consent.  Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4.  any *person* or legal entity entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Property Damage* means damage to, destruction of or loss of use of:

1.  *your car*;

2.  a *newly acquired car*;

3.  a *trailer owned by you*; and

4.  property:

    a.  that *you* or *resident relatives* own while contained in:

        (1) *your car*, a *newly acquired car*, a *temporary substitute car*, a *trailer owned by you*; or

        (2) any other motor vehicle designed for use on public roads that *you* or a *resident relative* do not own, but

only if such motor vehicle is being operated by *you* or a *resident relative*.

    b.  that an *insured*, other than *you* or a *resident relative*, owns while contained in *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*.

*Self-insurance*, *self-insured*, or *self-insurer* mean self-insurance, self-insured, or self-insurer under the Transportation Code, Insurance Code, or any applicable motor vehicle law.

*Uninsured Motor Vehicle* means:

1.  a land motor vehicle or any type of trailer:

    a.  the ownership, maintenance, and use of which is:

        (1) not:

            (a) insured;

            (b) *self-insured*; or

            (c) bonded

            for liability at the time of the accident; or

        (2) insured, *self-insured*, or bonded for liability at the time of the accident; but

            (a) the bonding or insuring company or the *self-insurer* denies that its policy or bond provides coverage for compensatory damages that result from the accident; or

            (b) the bonding or insuring company or the *self-insurer* is or becomes insolvent; or

    b.  the owner or driver of which remain unknown and which hits:

(1) *you* or a *resident relative*;

(2) a vehicle *occupied* by *you* or a *resident relative*; or

(3) *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*; or

2. an underinsured motor vehicle. An underinsured motor vehicle is a land motor vehicle or any type of trailer:

   a. the ownership, maintenance, and use of which is insured, *self-insured*, or bonded for liability at the time of the accident; and

   b. for which the total limits of insurance, *self-insurance*, and bonds for liability from all sources:

     (1) are not enough to pay the full amount the *insured* is legally entitled to recover as damages; or

     (2) have been reduced by payment of claims to an amount which is not enough to pay the full amount the *insured* is legally entitled to recover as damages.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by*, rented to, or furnished or available for the regular use of *you* or any *resident relative*;

3. *owned by* or rented to any government or any of its political subdivisions or agencies unless:

   a. the operator of the vehicle is uninsured; and

   b. there is no statute imposing liability for damage because of *bodily injury* or *property damage* on the governmental body for an amount not less than the limit of liability for this coverage;

4. designed for use primarily off public roads except while on public roads; or

5. while located for use as a dwelling or other premises.

**Insuring Agreement**

*We* will pay compensatory damages for *bodily injury* or *property damage* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be sustained by an *insured*. The *bodily injury* and *property damage* must be caused by an accident that involves the ownership, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle. If *we* and *you* do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on *us*.

**Consent to Settlement**

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us*.

**Deciding Fault and Amount**

1. a. The *insured* and *we* must agree to the answers to the following two questions:

     (1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

(2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to re-cover from the owner or driver of the *uninsured motor vehicle*?

b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

(1) file a lawsuit, in a state or federal court that has jurisdiction, against:

  (a) *us*;

  (b) the owner and driver of the *uninsured motor vehicle* un-less *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

  (c) any other party or parties who may be legally liable for the *insured's* damages;

(2) consent to a jury trial if requested by *us*;

(3) agree that *we* may contest the is-sues of liability and the amount of damages; and

(4) secure a judgment in that action. The judgment must be the final result of an actual trial and any ap-peals, if any appeals are taken.

2. *We* are not bound by any:

a. judgment obtained without *our* written consent; and

b. default judgment against any *person* or legal entity other than *us*.

3. Regardless of the amount of any award, including any judgment or default judg-ment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

**Limits**

1. The Uninsured/Underinsured Motorists Coverage limits for *bodily injury* are shown on the Declarations Page under "Uninsured/Underinsured Motorists Cov-erage – Bodily Injury Limits – Each Per-son, Each Accident".

a. The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the limit shown under "Each Person".

b. Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident".

2. The Uninsured/Underinsured Motorists Coverage limit for *property damage* is shown on the Declarations Page under "Uninsured/Underinsured Motorists Cov-erage – Property Damage Limit –Each Ac-cident". This is the most *we* will pay for all *property damage* as the result of any one accident.

3. These Uninsured/Underinsured Motorists Coverage limits are the most *we* will pay regardless of the number of:

a. *insureds*;

b. claims made;

c. policies or bonds applicable;

d. vehicles insured;

e. premiums shown on the Declarations Page; or

f. vehicles involved in the accident.

**Nonduplication**

1. *We* will not pay under Unin-sured/Underinsured Motorists Coverage any damages:

a. that have already been paid to or for the *insured*:

(1) by or on behalf of any *person* or legal entity  who is or may be held legally liable for the *bodily injury*

to the *insured* or *property damage*; or

(2) for *bodily injury* or *property damage* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*;

b. that:

(1) have already been paid; or

(2) could be paid

to or for the *insured* under any workers' compensation law, disability benefits law, or similar law. *We* will also not pay any damages that could have been paid under any such law, if the *insured* had pursued a claim in timely fashion;

c. that have already been paid under the Personal Injury Protection Coverage of this policy or the personal injury protection coverage of any other policy;

d. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other  motor vehicle policy, or other similar vehicle insurance; or

e. that are *property damage* paid or payable under any policy of property insurance.

2. For any *property damage* to which the Physical Damage Coverages (or similar coverage from another policy) and this coverage both apply, *you* may choose the coverage from which damages will be paid. *You* may recover under both coverages, but only if:

a. Neither one by itself is sufficient to cover the loss;

b. *You* pay the higher deductible amount (but *you* do not have to pay both deductibles); and

c. *You* will not recover more than the actual damages.

**Exclusions**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR LEGAL ENTITY WHO MAY BE LIABLE FOR THE *BODILY INJUR*Y OR *PROPERTY DAMAGE*;

2. FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY*:

a. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*;

b. WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*. However, if the motor vehicle is not *owned by you* or any *person* included in the definition of *you*, then this exclusion (2.b.) does not apply to *you* to the extent the Uninsured/Underinsured Motorists Coverage limit provided by this policy exceeds the uninsured/underinsured motorists coverage limit, if any, provided by a policy insuring the *resident relative's* motor vehicle;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM:

a. NUCLEAR REACTION;

b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

6. FOR AN *INSURED* WHO INTENTIONALLY CAUSES *BODILY INJURY* TO THAT *INSURED* OR *PROPERTY DAMAGE* TO PROPERTY THAT *INSURED* OWNS;

7. FOR PUNITIVE OR EXEMPLARY DAMAGES;

8. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION. This exclusion does not apply to the extent Uninsured/Underinsured Motorists Coverage would apply in the absence of the order of restitution;

9. FOR AN *INSURED* WHO IS *OCCUPYING* A VEHICLE DURING THE PERIOD OF TIME AN *INSURED*, WHILE LOGGED ON TO A TRANSPORTATION NETWORK COMPANY'S DIGITAL NETWORK AS A DRIVER, IS A DRIVER OF THAT VEHICLE; OR

10. FOR THE FIRST $250 OF *PROPERTY DAMAGE* TO THE PROPERTY OF THAT *PERSON* RESULTING FROM ONE ACCIDENT.

**If Other Uninsured/Underinsured Motorists Coverage Applies**

1. If Uninsured/Underinsured Motorists Coverage provided by this policy and one or more other vehicle policies issued to *you* by *us* apply to the same *bodily injury*, then:

   a. the Uninsured/Underinsured Motorists Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured/Underinsured Motorists Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   a. If:

      (1) this is the only vehicle policy issued to *you* by *us* that provides Uninsured/Underinsured Motorists Coverage which applies to the accident as primary coverage; and

      (2) uninsured/underinsured motorists coverage provided by one or more sources other than *us* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured/underinsured motorists coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* by *us* provides Uninsured/Underinsured Motorists Coverage which applies to the accident as primary coverage; and

      (2) uninsured/underinsured motorists coverage provided by one or more sources other than *us* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that the maximum amount that may be paid by *us* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured/underinsured

26
9843A

motorists coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured/Underinsured Motorists Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* by *us* that provides Uninsured/Underinsured Motorists Coverage which applies to the accident as excess coverage; and

      (2) uninsured/underinsured motorists coverage provided by one or more sources other than *us* also applies as excess coverage for the same accident,

   then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured/underinsured motorists coverage that apply as excess coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* by *us* provides Uninsured/ Underinsured Motorists Coverage which applies to the accident as excess coverage; and

      (2) uninsured/underinsured motorists coverage provided by one or more sources other than *us* also applies as excess coverage for the same accident,

   then *we* will pay the proportion of damages payable as excess that the maximum amount that may be paid by *us* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured/underinsured motorists coverage that apply as excess coverage.

## Our Payment Options

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payments unless directed otherwise by the *insured*.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1. Comprehensive Coverage if "D";

2. Collision Coverage if "G";

3. Emergency Road Service Coverage if "H";

4. Car Rental and Travel Expenses Coverage if "R1"

is shown under "SYMBOLS" on the Declarations Page, but only for those vehicles for which a premium is shown for that coverage.

## Deductible

A Comprehensive Coverage deductible or a Collision Coverage deductible applies to those vehicles for which a deductible and a corresponding coverage symbol and premium are shown on the Declarations Page. However, *we* will not deduct more than $500 for any:

1. *loss* to a *newly acquired car* if "D"; or

2. **loss caused by collision** to a **newly acquired car** if "G"

is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

**Covered Vehicle** means:

1. **your car**;
2. a **newly acquired car**;
3. a **temporary substitute car**;
4. a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;
5. a **non-owned car** while it is:
   a. being driven by an **insured**; or
   b. in the custody of an **insured** if at the time of the **loss** it is:
      (1) not being driven; or
      (2) being driven by a **person** other than an **insured** and being **occupied** by an **insured**;
6. a **non-owned trailer** while it is being used by an **insured**; and
7. a **non-owned camper** while it is being used by an **insured**;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of **trailers** and campers must be securely fixed as a permanent part of the **trailer** or camper.

**Daily Rental Charge** means the sum of:

1. the daily rental rate;
2. mileage charges; and
3. related taxes.

**Insured** means **you** and **resident relatives**.

**Loss** means:

1. direct, sudden, and accidental damage to; or
2. total or partial theft of

a **covered vehicle**. **Loss** does not include any reduction in the value of any **covered vehicle**

after it has been repaired, as compared to its value before it was damaged.

**Loss Caused By Collision** means a **loss** caused by:

1. a **covered vehicle** hitting or being hit by another vehicle or another object; or
2. the overturning of a **covered vehicle**.

Any **loss** caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a **Loss Caused By Collision**.

**Non-Owned Camper** means a camper designed to be mounted on a pickup truck that:

1. is in the lawful possession of an **insured**;
2. is not **owned by**:
   a. an **insured**;
   b. any other **person** who resides in **your** household; or
   c. an employer of any **person** described in a. or b. above; and
3. has not been used by, rented by, or in the possession of an **insured** for more than 30 consecutive calendar days immediately prior to the date of the **loss**. Use, rental, or possession for any part of a day constitutes a calendar day.

**Non-Owned Trailer** means a **trailer** that:

1. is in the lawful possession of an **insured**;
2. is not **owned by**:
   a. an **insured**;
   b. any other **person** who resides in **your** household; or
   c. an employer of any **person** described in a. or b. above; and
3. has not been used by, rented by, or in the possession of an **insured** for more than 30 consecutive calendar days immediately prior to the date of the **loss**. Use, rental, or possession for any part of a day constitutes a calendar day.

28
9843A

**Insuring Agreements**

1. **Comprehensive Coverage**

   *We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and

   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date *you* report the theft to *us*; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to *your* possession in a drivable condition;

            (ii) the date *we* offer to pay for the *loss* if the vehicle has not yet been recovered; or

            (iii) the date *we* offer to pay for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

      (2) during the period that:

         (a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

         (b) ends on the date the vehicle is repaired.

   These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

   Refer to **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** for the most *we* will pay per day and per *loss*.

2. **Collision Coverage**

   *We* will pay for *loss caused by collision* to a *covered vehicle*.

3. **Emergency Road Service Coverage**

   *We* will pay the fair cost incurred by an *insured* for:

   a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

   b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

   c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

   d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

   e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

4. **Car Rental and Travel Expenses Coverage**

   a. **Car Rental Expense**

      *We* will pay the *daily rental charge* incurred when an *insured* rents a *car* from a *car business* while *your car* or a *newly acquired car* is:

      (1) not drivable; or

      (2) being repaired

      as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

      *We* will pay this *daily rental charge* incurred during a period that:

      (1) starts on the date:

         (a) the vehicle is not drivable as a result of the *loss*; or

29
9843A

(b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c) seven days after *we* offer to pay for the *loss* if the vehicle is:

(i) a total loss as determined by *us*; or

(ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by an *insured* must be reported to *us* before *we* will pay such amount.

Refer to **Car Rental Expense** of **Limits – Car Rental and Travel Expenses Coverage** for the most *we* will pay.

b. **Travel Expenses**

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home.  *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

(a) starts after the *loss* occurs; and

(b) ends on the earlier of:

(i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

(ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

Refer to **Travel Expenses** of **Limits – Car Rental and Travel Expenses Coverage** for the most *we* will pay.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive coverage deductible or collision coverage deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

Refer to **Rental Car – Repayment of Deductible Expense** of **Limits – Car Rental and Travel Expenses Coverage** for the most *we* will pay.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If the *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage or Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*.  *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured*

30
9843A

or the owner of the **covered vehicle**, if the **covered vehicle** is not drivable;

2. store the **covered vehicle**, if it is not drivable immediately after the **loss**, at:

   a. any one repair facility or commercial storage facility, neither of which was chosen by an **insured** or the owner of the **covered vehicle**; and

   b. any one repair facility chosen by the owner of the **covered vehicle**, and **we** determine such vehicle is a total loss.

   If the owner of the **covered vehicle** consents, then **we** may move the **covered vehicle** at **our** expense to reduce storage costs. If the owner of the **covered vehicle** does not consent, then **we** will pay only the storage costs that would have resulted if **we** had moved the damaged **covered vehicle**; and

3. clean up debris from the **covered vehicle** at the location of the **loss**. The most **we** will pay to clean up the debris is $250 for any one **loss**.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. **We** have the right to choose to settle with **you** or the owner of the **covered vehicle** in one of the following ways:

   a. Pay the cost to repair the **covered vehicle** minus any applicable deductible.

      (1) **We** have the right to choose one of the following to determine the cost to repair the **covered vehicle**:

         (a) The cost agreed to by both the owner of the **covered vehicle** and **us**;

         (b) A bid or repair estimate approved by **us**; or

         (c) A repair estimate that is written based upon or adjusted to:

            (i) the prevailing competitive price;

            (ii) the paintless dent repair price that is competitive in the market; or

      (iii) a combination of (i) and (ii) above.

      The prevailing competitive price means prices charged by a majority of the repair market in the area where the **covered vehicle** is to be repaired as determined by a survey made by **us**. If asked, **we** will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the **covered vehicle** to its pre-loss condition.

      **You** agree with **us** that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

      (2) The cost to repair the **covered vehicle** does not include any reduction in the value of the **covered vehicle** after it has been repaired, as compared to its value before it was damaged.

      (3) If **you** and **we** agree, then windshield glass will be repaired instead of replaced;

   b. Pay the actual cash value of the **covered vehicle** minus any applicable deductible.

      (1) The owner of the **covered vehicle** and **we** must agree upon the actual cash value of the **covered vehicle**. If there is disagreement as to the actual cash value of the **covered vehicle**, then the disagreement will be resolved by appraisal upon written request of the owner or **us**, using the following procedures:

         (a) The owner and **we** will each select a competent appraiser.

31
9843A

(b) The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

(c) Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*; or

c. Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2. The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3. The most *we* will pay for *loss* to a ***non-owned trailer*** or a ***non-owned camper*** is $2,500.

**Limits – Car Rental and Travel Expenses Coverage**

1. **Car Rental Expense**

   The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

   a. The limit shown under "Each Day" is the most *we* will pay for the ***daily rental charge***. If:

      (1) a dollar amount is shown, then *we* will pay the ***daily rental charge*** up to that dollar amount; or

      (2) a percentage amount is shown, then *we* will pay that percentage of the ***daily rental charge***.

   b. Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

2. **Travel Expenses**

   The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

3. **Rental Car – Repayment of Deductible Expense**

   The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

**Nonduplication**

1. *We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the ***covered vehicle*** has already received payment from,

or on behalf of, a party who is legally liable for the *loss* or expense.

2. For any damage to property to which the Uninsured/Underinsured Motorists Coverage (from this or any another policy) and one of the Physical Damage Coverages both apply, *you* may choose the coverage from which damages will be paid. *You* may recover under both coverages, but only if:

   a. Neither one by itself is sufficient to cover the *loss*;

   b. *You* pay the higher deductible amount (but *you* do not have to pay both deductibles); and

   c. *You* will not recover more than the actual damages.

**Exclusions**

THERE IS NO COVERAGE FOR:

1. ANY *COVERED VEHICLE* THAT IS:

   a. INTENTIONALLY DAMAGED; OR

   b. STOLEN

   BY OR AT THE DIRECTION OF AN *INSURED*;

2. ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

3. ANY *COVERED VEHICLE*:

   a. DURING THE PERIOD OF TIME THE DRIVER OF THE *COVERED VEHICLE* IS LOGGED ON AS A DRIVER TO A TRANSPORTATION NETWORK COMPANY'S DIGITAL NETWORK; OR

   b. WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion (3.b.) does not apply to the use of a *private passenger car* on a share-the-expense basis;

4. ANY *COVERED VEHICLE* DUE TO:

   a. THEFT;

   b. CONVERSION;

   c. EMBEZZLEMENT; OR

   d. SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PERSON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5. *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POSSESSION OF THAT *CAR* TO A *PERSON* OR LEGAL ENTITY UNDER AN ACTUAL OR PRESUMED SALES AGREEMENT;

6. ANY *COVERED VEHICLE* TO THE EXTENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7. *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*. This exclusion does not apply if the *fungi* result from a *loss* which would be payable under Comprehensive Coverage or Collision Coverage;

8. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

   a. NUCLEAR REACTION;

   b. RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

   c. THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

9. *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10. **LOSS** TO ANY **COVERED VEHICLE** THAT RESULTS FROM WAR OF ANY KIND;

11. **YOUR CAR** WHILE SUBJECT TO ANY:

    a.  RENTAL AGREEMENT; OR

    b.  LEASE AGREEMENT

NOT SHOWN ON THE DECLARA-TIONS PAGE;

12. ANY **NON-OWNED CAR** WHILE IT IS:

    a.  BEING MAINTAINED OR USED BY ANY **PERSON** WHILE THAT **PERSON** IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A **CAR BUSINESS**; OR

    b.  USED IN ANY BUSINESS OR OC-CUPATION OTHER THAN A **CAR BUSINESS**. This exclusion (12.b.) does not apply to a **private passenger car**;

13. ANY PART OR EQUIPMENT OF A **COVERED VEHICLE** IF THAT PART OR EQUIPMENT:

    a.  FAILS OR IS DEFECTIVE; OR

    b.  IS DAMAGED AS A DIRECT RE-SULT OF:

        (1) WEAR AND TEAR; OR

        (2) FREEZING; OR

        (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAK-DOWN OR MALFUNCTION

    OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the **loss** is the result of theft of the **covered vehicle**;

14. ANY PART OR EQUIPMENT:

    a.  THAT IS NOT LEGAL FOR USE IN OR ON THE **COVERED VEHICLE** IN THE JURISDICTION WHERE THE **COVERED VEHICLE** IS REG-ISTERED; OR

    b.  THE USE OF WHICH IS NOT LE-GAL IN THE JURISDICTION WHERE THE **COVERED VEHICLE**

IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE **COVERED VEHICLE**.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the **covered vehicle**, then **we** will pay the cost that **we** would other-wise have paid to repair the vehicle with the legal version of the part or equipment. **We** will not pay any cost necessary to mod-ify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

    a.  **loss** is caused by missiles, falling ob-jects, windstorm, hail, fire, explosion, earthquake, water, flood, total or par-tial theft, malicious mischief, vandal-ism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

    b.  **loss caused by collision** to:

        (1) another part of the **covered vehicle** causes **loss** to tires; or

        (2) tires is caused by direct contact with another vehicle;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECON-STRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEAS-URING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

    a.  DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

    b.  **OWNED BY** AN **INSURED**; AND

    c.  NOT SHOWN ON THE DECLARA-TIONS PAGE; OR

19. ANY ***COVERED VEHICLE*** WHILE IT IS:

   a. BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b. ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING.   This exclusion (19.b.) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1. If the same ***loss*** or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that ***loss*** or expense applies.

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to ***you*** by ***us*** apply to the same ***loss*** or expense, then only one policy applies. ***We*** will select a policy that pays the most for the ***loss*** or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a ***loss*** to ***your car***.

   If similar coverage provided by one or more sources other than ***us*** also applies as primary coverage for the same ***loss*** or expense, then ***we*** will pay the proportion of the ***loss*** or expense payable as primary that the maximum amount that may be paid by ***us*** bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than ***us*** also applies as excess coverage for the same ***loss*** or expense, then ***we*** will pay the proportion of the ***loss*** or expense payable as excess that the maximum amount that may be paid by ***us*** bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in ***your car***.   Coverage for the creditor's interest is only provided for a ***loss*** that is payable to ***you***.

   However, if this policy is cancelled or nonrenewed, then ***we*** will provide coverage for the creditor's interest until ***we*** notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a ***loss*** that would have been payable to ***you*** if this policy had not been cancelled or nonrenewed.   The date such termination is effective will be at least 10 days after the date ***we*** mail or electronically transmit a notice of the termination to the creditor.

2. If ***we*** pay such creditor, then ***we*** are entitled to the creditor's right of recovery against ***you*** to the extent of ***our*** payment. ***Our*** right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. ***We*** may, at ***our*** option, make payment to one or more of the following for ***loss*** to a ***covered vehicle owned by you***:

      (1) ***You***;

      (2) The repairer unless directed otherwise by the ***insured***; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

b. *We* may make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

(1) *You*;

(2) The owner of such vehicle;

(3) The repairer; or

(4) A creditor, to the extent of its interest.

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

*We* may make payment to one or more of the following:

a. *You*;

b. The *insured* who incurred the expense; or

c. Any party that provided the service for which payment is owed unless directed otherwise by the *insured*.

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE

### DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE

This policy provides Death, Dismemberment and Loss of Sight Coverage if "S" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definition**

*Insured* means a *person* whose name is shown under "Death, Dismemberment and Loss of Sight Coverage – Persons Insured" on the Declarations Page.

**Insuring Agreement**

*We* will pay the highest applicable benefit shown in the following Death, Dismemberment and Loss of Sight Benefits Schedules if an *insured*:

1. dies; or

2. suffers dismemberment or permanent loss of sight, as described in the schedule

as the direct result of an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.

The *insured* must be *occupying* or be struck as a *pedestrian* by a land motor vehicle or any type of trailer at the time of the accident. The death, dismemberment, or permanent loss of sight must occur within 90 days immediately following the date of the accident.

**Benefit**

The applicable benefit shown in the schedule is the most *we* will pay for any one *insured* in any one accident. Any benefit paid or payable for dismemberment or permanent loss of sight reduces the death benefit.

The benefits shown in the schedules are doubled for an *insured* who at the time of the accident was *occupying* a *private passenger car* and using a seat belt in the manner recommended by the vehicle's manufacturer.

### Death, Dismemberment and Loss of Sight Benefits Schedules

| If the amount shown on the Declarations Page for the *insured* is $5,000, then *we* will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight: | |
|---|---|
| Death | $5,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand or one foot and all sight of one eye | $5,000 |
| Loss of one hand or one foot; or all sight of one eye | $2,500 |
| Loss of the thumb and a finger on one hand; or any three fingers | $1,500 |
| Loss of any two fingers | $1,000 |

The hand must be cut off through or above the wrist.  The foot must be cut off through or above the ankle.  The whole thumb or finger must be cut off.

If the amount shown on the Declarations Page for the **insured** is $10,000, then **we** will pay the applicable benefit shown below for death or for the described dismemberment or permanent loss of sight:

| | |
|---|---|
| Death | $10,000 |
| Loss of both hands; both feet; all sight of both eyes; one hand and one foot; or one hand and one foot and all sight of one eye | $10,000 |
| Loss of one hand or one foot; or all sight of one eye | $5,000 |
| Loss of the thumb and a finger on one hand; or any three fingers | $3,000 |
| Loss of any two fingers | $2,000 |

The hand must be cut off through or above the wrist.  The foot must be cut off through or above the ankle.  The whole thumb or finger must be cut off.

## LOSS OF EARNINGS COVERAGE

This policy provides Loss of Earnings Coverage if "Z" is shown under "SYMBOLS" on the Declarations Page.

### Additional Definitions

**Insured** means a **person** whose name is shown under "Loss of Earnings Coverage – Persons Insured" on the Declarations Page.

**Total Disability** means the **insured's** inability to work, either full or part time, in his or her occupation or any other similar occupation for which he or she is reasonably fitted by education, training, or experience.

**Weekly Earnings** means 85% of all earnings for the **insured's** services before any deductions.  When **weekly earnings** cannot be determined on a weekly basis an average will be used.  The average is 85% of the total earnings

for the 52 weeks just prior to the accident divided by 52.

### Insuring Agreement

**We** will pay the **insured** his or her loss of **weekly earnings**, which occur while the **insured** is living, due to continuous **total disability** that:

1.  is the direct result of **bodily injury** caused by an accident that involves the use of a land motor vehicle or any type of trailer as a vehicle and not due to any other cause.  At the time of the accident, the **insured** must be **occupying** or be struck as a **pedestrian** by a land motor vehicle or any type of trailer; and

2.  starts within 20 days immediately following the date of the accident and lasts for a period of at least 30 consecutive days.  **We** will not pay for the first seven days of the 30 day period.

### Limit

The most **we** will pay any one **insured** is:

1.  $250 for each full workweek of **total disability**; and

2.  a pro rata portion of $250 for less than a full workweek of **total disability**.

Subject to the workweek limit, the most **we** will pay any one **insured** for all loss of **weekly earnings** due to any one accident is $15,000.

**We** will pay once every two weeks the **insured's** loss of **weekly earnings** owed.

### Exclusions – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage

DEATH, DISMEMBERMENT AND LOSS OF SIGHT COVERAGE AND LOSS OF EARNINGS COVERAGE DO NOT APPLY TO AN **INSURED**:

1.  WHILE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN A **CAR BUSINESS**;

2.  WHILE **OCCUPYING**, LOADING, OR UNLOADING:

a. AN EMERGENCY VEHICLE IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT;

b. A VEHICLE, OTHER THAN AN EMERGENCY VEHICLE, WHILE USED IN THE:

   (1) *INSURED'S* BUSINESS; OR

   (2) COURSE AND SCOPE OF HIS OR HER EMPLOYMENT IN OTHER THAN A *CAR BUSINESS*.

   This exclusion (2.b.) does not apply if the vehicle is a *private passenger car*;

c. A MILITARY VEHICLE; OR

d. A VEHICLE WHILE IT IS:

   (1) BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   (2) ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH-SPEED DRIVING. This exclusion (2.d.(2)) does not apply if the vehicle is being used in connection with an activity other than racing, high-speed driving, or any type of competitive driving;

3. WHILE *OCCUPYING*, LOADING, UNLOADING, OR WHO IS STRUCK AS A *PEDESTRIAN* BY:

   a. A MOTOR VEHICLE THAT RUNS ON RAILS OR CRAWLER-TREADS;

   b. A MOTOR VEHICLE THAT IS DESIGNED FOR USE PRIMARILY OFF PUBLIC ROADS WHILE OFF PUBLIC ROADS; OR

c. A MOTOR VEHICLE OR ANY TYPE OF TRAILER, EITHER OF WHICH IS LOCATED FOR USE AS A DWELLING OR OTHER PREMISES; OR

4. FOR DEATH, DISMEMBERMENT, LOSS OF SIGHT, OR *TOTAL DISABILITY* THAT RESULTS FROM:

   a. WAR OF ANY KIND;

   b. NUCLEAR REACTION, RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE, OR THE ACCIDENTAL OR INTENTIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOACTIVE DEVICE;

   c. THE DISCHARGE OF A FIREARM;

   d. EXPOSURE TO *FUNGI*;

   e. SUICIDE OR ATTEMPTED SUICIDE REGARDLESS OF WHETHER THE *INSURED* WAS SANE OR INSANE; OR

   f. DISEASE except pus-forming infection due to *bodily injury* sustained in the accident.

**Our Payment Options – Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage**

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* or legal entity authorized by law to receive such payment unless directed otherwise by the *insured*.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

      unless authorized by the terms of this policy.

   c. Any *person* or legal entity making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured/Underinsured Motorists Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage, each *insured*, and any other *person* or legal entity making claim or seeking payment; and

   c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or legal entity making claim or seeking payment;

   must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or legal entity must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or legal entity answering questions under oath to answer the questions with only that *person's* or legal entity's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present. However, a parent or guardian of the *insured*, if the *insured* is a minor, may also be present.

5. **Other Duties Under the Physical Damage Coverages**

   When there is a *loss*, *you* or the owner of the *covered vehicle* must:

   a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

   b. make a prompt report to the police when the *loss* is the result of theft;

   c. allow *us* to:

      (1) inspect any damaged property;

39
9843A

(a) before its repair or disposal; and

(b) during its repair;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all pertinent:

(1) records;

(2) receipts;

(3) invoices; and

(4) authorizations

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

**6. Other Duties Under Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured/Underinsured Motorists Coverage, Death, Dismemberment and Loss of Sight Coverage, and Loss of Earnings Coverage**

A *person* making claim under:

a. Personal Injury Protection Coverage, Medical Payments Coverage, Uninsured/Underinsured Motorists Coverage, Death, Dismemberment and Loss of Sight Coverage, or Loss of Earnings Coverage must:

(1) notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury.  If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

(2) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of

the report will be sent to the *person* upon written request;

(3) provide written authorization for *us* to obtain:

(a) medical records which are reasonably related to the *bodily injury*; and

(b) any other pertinent information necessary to substantiate the claim, including:

(i) medical bills; and

(ii) wage, salary, and employment information.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(4) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

b. Uninsured/Underinsured Motorists Coverage must:

(1) promptly report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police and to *us*;

(2) send *us* immediately a copy of all lawsuit papers if the *insured* files a lawsuit against the party liable for the accident; and

(3) when there is *property damage*:

(a) protect the damaged property from additional damage.  *We* will pay any reasonable expense incurred to do so that is reported to *us*;

(b) allow *us* to:

   (i) inspect any damaged property:

      1) before its repair or disposal; and

      2) during its repair

   (ii) test any part or equipment before that part or equipment is removed or repaired; and

   (iii) move the damaged property at *our* expense in order to conduct such inspection or testing;

(c) provide *us* all pertinent:

   (i) records;

   (ii) receipts;

   (iii) invoices; and

   (iv) authorizations

   that *we* request and allow *us* to make copies; and

(d) not abandon the damaged property to *us*; and

c.  Loss of Earnings Coverage must:

   (1) make a claim under this policy;

   (2) report to *us* when that *person* has a *total disability*; and

   (3) provide proof of continued *total disability* when *we* ask for it.

## GENERAL TERMS

1. **When Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

2. **Where Coverage Applies**

   The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

   a. in the United States of America and its territories and possessions;

   b. in Canada; and

   c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage apply anywhere in the world.

3. **Limited Coverage in Mexico**

   ### WARNING

   ### READ THIS PROVISION CAREFULLY!

   Auto accidents in Mexico are subject to the laws of Mexico only — NOT the laws of the United States of America. Unlike the United States, the Republic of Mexico considers an auto accident a **CRIMINAL OFFENSE** as well as a civil matter.

   In some cases, the coverage provided by this provision may NOT be recognized by Mexican authorities and the company may not be allowed to implement this coverage at all in Mexico. You should consider purchasing auto coverage from a licensed Mexican Insurance Company before driving in Mexico.

   Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of

America border and only for *insureds* as defined under each of the following coverages:

a. **Liability Coverage**

For claims brought against an *insured* in Mexico, the **Supplementary Payments** provision of this policy's Liability Coverage is changed to read:

*We* may, in addition to the damages described in item 1. of the **Insuring Agreement** of this policy's Liability Coverage, pay or reimburse, at *our* option, reasonable attorney fees for an attorney licensed in Mexico to appear for and provide advice to *insureds* as defined under this policy's Liability Coverage. The amount of such attorney fees incurred by an *insured* must be reported to *us* before *we* will make payment. These payments are not subject to this policy's Liability Coverage limits.

b. **Medical Payments Coverage**

c. **Physical Damage Coverages**

Any amount payable for the repair or replacement of the *covered vehicle* under the **Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage** provision of this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

*WE* HAVE NO DUTY TO PROVIDE A DEFENSE FOR *YOU* OR ANY OTHER *INSURED* IN ANY CRIMINAL, CIVIL, OR OTHER ACTION.

*WE* HAVE NO DUTY TO PAY ANY CLAIM OR COST THAT WOULD NOT BE PAYABLE UNDER THIS POLICY IF THE ACCIDENT OR *LOSS* HAD OCCURRED IN THE STATE OF TEXAS IN THE UNITED STATES OF AMERICA.

All other policy provisions not in conflict with the provisions in this **Limited Coverage in Mexico** provision of this policy apply.

**If Other Coverage Applies**

Any coverage provided by this **Limited Coverage in Mexico** provision is excess over any other applicable insurance.

**Legal Action Against Us**

Any legal action against *us* arising out of an accident or *loss* occurring in Mexico must be brought in a court that has jurisdiction in the state of Texas in the United States of America.

**Additional Exclusions**

We do not provide any coverage:

a. if *your car* is not principally garaged and used in the United States of America; and

b. to any *person* who does not live in the United States of America.

4. **Newly Owned or Newly Leased Car**

If:

a. *you* want to insure a *private passenger car* newly *owned by you* with the *State Farm Companies* after that *private passenger car* ceases to be a *newly acquired car*, then *you* must:

(1) request *we* replace a *car* currently shown on the Declarations Page of this policy with the *private passenger car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(a) before the *private passenger car* newly *owned by you* ceases to be a *newly acquired car*, then that *private passenger car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *private passenger car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(b) after the **private passenger car** newly **owned by you** ceases to be a **newly acquired car**, then that **private passenger car** newly **owned by you** will be insured by this policy as **your car** beginning on the date and time **you** make the request. The added amount due will be calculated based on that date;

(2) ask **us**, on or before the 20th day after **you** become owner or lessee, to add the **private passenger car** to **your** policy and pay **us** any amount due. If **you** ask **us** to add the **car** after the 20th day, then coverage will be provided only if both the applicant and the vehicle are eligible for coverage. The added amount due will be calculated based on the date the **car** is added to the policy; or

(3) apply to the **State Farm Companies** for a separate policy to insure the **private passenger car** newly **owned by you**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

b. a **resident relative** wants to insure a **private passenger car** newly **owned by** the **resident relative** with the **State Farm Companies** after that **private passenger car** ceases to be a **newly acquired car**, then the **resident relative** must apply to the **State Farm Companies** for a separate policy to insure the **private passenger car** newly **owned by** the **resident relative**. Such policy will be issued only if both the applicant and the vehicle are eligible for coverage at the time of the application.

5. **Changes to This Policy**

   a. **Changes in Policy Provisions**

      (1) Subject to 5.a.(2) below, this policy may only be changed by issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

(2) If **we** change this policy to give broader coverage without an additional premium charge, then **we** will give **you** the broader coverage as of the date **we** make the change effective in the state of Texas without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

   b. **Change of Interest**

      (1) No change of interest in this policy is effective unless **we** consent in writing.

      (2) Except under Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage, if a named insured shown on the Declarations Page dies, then the definition of **insured** under each of the coverages provided by this policy is changed to include:

         (a) any **person** with lawful custody of **your car**, a **newly acquired car**, or a **temporary substitute car** until a legal representative is qualified; and then

         (b) the legal representative of the deceased named insured.

      This only applies while such **person** is maintaining or using **your car**, a **newly acquired car**, or a **temporary substitute car**.

      Policy notice requirements are met by mailing the notice to the most recent policy address that **we** have on record for the deceased named insured.

   c. **Joint and Individual Interests**

      If **you** consists of more than one **person** or entity, then each acts for all to change or cancel the policy.

   d. **Change of Policy Address**

      **We** may change the named insured's policy address as shown on the Declarations Page and in **our** records to

the most recent address provided to **us** by:

   (1) **you**; or

   (2) the United States Postal Service.

6. **Premium**

  a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Auto Renewal.

  b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

  c. The premium for this policy may vary based upon:

   (1) the purchase of other products or services from the **State Farm Companies**;

   (2) the purchase of products or services provided by a legal entity that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that legal entity; or

   (3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with a legal entity of which **you** are a member, employee, subscriber, licensee, or franchisee.

  d. The premium for this policy is based upon information **we** have received from **you** or other sources. **You** must inform **us** if any information regarding the following is incorrect or incomplete, or

changes during the policy period, and **you** must answer questions **we** ask regarding the following:

   (1) **Your car**, or its use, including annual mileage;

   (2) The **persons** who regularly drive **your car**, including newly licensed members of **your** family;

   (3) **Your** marital status; or

   (4) The location where **your car** is primarily garaged.

If the above information or any other information used to determine the premium is incorrect, incomplete, changes during the policy period, or is not provided to **us** when **we** ask, then **we** may decrease or increase the premium during the policy period. If **we** decrease the premium during the policy period, then **we** will provide a refund or a credit in the amount of the decrease. If **we** increase the premium during the policy period, then **you** must pay the amount of the increase.

7. **Renewal**

**We** agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless **we** mail or deliver a nonrenewal notice or a cancellation notice as set forth in 8. and 9. below.

8. **Nonrenewal**

If **we** decide not to renew this policy, then, at least 30 days before the end of the current policy period, **we** will mail or deliver a nonrenewal notice to the most recent policy address that **we** have on record for the named insured who is shown on the Declarations Page.

If **we** fail to provide notice of nonrenewal at least 30 days before the end of the current policy period, then **we** will renew this policy, at **your** request, at the expiration of the current policy period. Notwithstanding **our** failure to provide notice of nonrenewal at least 30 days before the end of the current

policy period, this policy will terminate on the effective date of any replacement or succeeding policy issued to *you* by another insurance carrier.

*We* will only nonrenew this policy on an annual anniversary of its original effective date.

*We* will not nonrenew this policy based solely on:

a. the age of *you* or any *resident relative*; or

b. the fact that *you* are an elected official.

9. **Cancellation**

a. **How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

b. **How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The notice will provide the date cancellation is effective, which will be at least 10 days after the date *we* mail or deliver the cancellation notice.

After this policy has been in force for more than 59 days, *we* will not cancel this policy unless:

(1) *you* submit a fraudulent claim;

(2) the premium is not paid when due; or

(3) the driver's license or the motor vehicle registration of:

(a) *you*;

(b) any *resident relative*; or

(c) any other *person* who usually drives *your car*

has been suspended or revoked. *We* will not cancel this policy if *you* agree, by the attachment of an endorsement naming such *person*, that *we* shall not be liable and no liability or obligation of any kind shall attach to *us* for *bodily injury*, *loss* or damage under any of the coverages of this policy while any motor vehicle is operated by the *person* named.

*We* will not cancel this policy based solely on the fact that *you* are an elected official.

c. **Return of Unearned Premium**

Premium will be earned on a pro rata basis.

Any unearned premium will be returned no later than the 15th *business day* after the date cancellation is effective.

10. **Assignment**

No assignment of benefits, except as provided for in **Our Payment Options** of Personal Injury Protection Coverage or Medical Payments Coverage, or other transfer of rights is binding upon *us* unless approved by *us*.

11. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

12. **Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

13. **Our Right to Recover Our Payments**

Personal Injury Protection Coverage, Death, Dismemberment and Loss of Sight Coverage and Loss of Earnings Coverage payments are not recoverable by *us*. Under all other coverages, the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or legal entity who has a legal right to collect from another *person* or legal entity, then *we* will be subrogated to that right to the extent of *our* payment. This does not apply under the Physical Damage Coverages to a *person* using a *covered vehicle* within the scope of *your* consent.

The *person* or legal entity to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

A release of an insurer of an underinsured motor vehicle does not prejudice *our* rights.

b. **Reimbursement**

If *we* make payment under this policy and the *person* or legal entity to or for whom *we* make payment recovers or has recovered from another *person* or legal entity, then the *person* or legal entity to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

However, if *we* have consented in writing to a settlement under the Uninsured/Underinsured Motorists Coverage, then *we* will not claim the amount recovered from an insurer of an underinsured motor vehicle.

14. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy.  In addition, legal action may only be brought against *us* regarding:

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

(1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

(2) agreement between the claimant and *us*.

b. Medical Payments Coverage if the legal action relating to this coverage is brought against *us* within two years and one day after the cause of action first accrues.

c. Uninsured/Underinsured Motorists Coverage if the *insured* or that *insured's* legal representative:

(1) presents an Uninsured/Underinsured Motorists Coverage claim to *us*; and

(2) files a lawsuit in accordance with the **Deciding Fault and Amount** provision.

Except as provided in c.(2) above, no other legal action may be brought against *us* relating to Uninsured/ Underinsured Motorists Coverage for any other causes of action that arise out of or are related to this coverage until there has been full compliance with the provisions titled **Consent to Settlement** and **Deciding Fault and Amount**. Any such other legal action must be brought against us within two years and one day after the cause of action first accrues.

d. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within two years and one day after the cause of action first accrues.

15. **Choice of Law**

Without regard to choice of law rules, the law of the state of:

a. Texas will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

   (1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

   (2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

16. **Severability**

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

17. **Electronic Delivery**

With *your* consent, *we* may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

18. **Notice of a Claim**

a. Within 15 days after *we* receive *your* written notice of claim, *we* shall:

   (1) acknowledge receipt of the claim. If *our* acknowledgement of the claim is not in writing, *we* will keep a record of the date, manner, and content of *our* acknowledgement.

   (2) begin any investigation of the claim.

   (3) request from *you* all items, statements, and forms *we* reasonably believe, at that time, will be required from *you*.

*We* may request more information, if during the investigation of the claim such additional requests are necessary.

b. After *we* receive the information required to secure final proof of loss, *we* must notify *you* in writing whether the claim will be accepted or rejected or whether additional time is needed:

   (1) within 15 *business days*; or

   (2) within 30 days if *we* have a reasonable basis to believe the loss resulted from arson.

c. If *we* do not accept *your* claim, *we* must:

   (1) give the reasons for rejecting *your* claim, or

   (2) give the reasons *we* need additional time to process *your* claim. *We* shall accept or reject *your* claim no later than 45 days after the date *we* request additional time.

d. In the event of a weather-related catastrophe or major natural disaster, as defined by the Texas Department of Insurance, the claim-handling deadlines as stated above are extended for an additional 15 days.

e.  Loss Payment

(1) If *we* notify *you* that *we* will pay *your* claim, or part of *your* claim, *we* must pay within 5 *business days* after *we* notify *you*.

(2) If payment of *your* claim, or part of *your* claim, is conditioned upon the performance of an act by *you*, *we* must pay within 5 *business days* after the date the act is performed.

f.  Notice of Settlement of Liability Claim

(1) *We* will notify *you* in writing of any initial offer to settle a claim against *you* under the liability section of this policy. *We* will give *you* notice within 10 days after the date the offer is made.

(2) *We* will notify *you* in writing of any settlement of a claim against *you* under the liability section of this policy. *We* will give *you* notice within 30 days after the date of the settlement.

Policy Form 9843A
©, Copyright, State Farm Mutual Automobile Insurance Company, 2015



KSB / ALL
**Transmittal Number: 26905301**
**Date Processed: 05/11/2023**

# Notice of Service of Process

**Primary Contact:**    State Farm Enterprise SOP
Corporation Service Company- Wilmington, DELAWARE
251 Little Falls Dr
Wilmington, DE 19808-1674

| | |
|---|---|
| **Entity:** | State Farm Mutual Automobile Insurance Company<br>Entity ID Number  3461675 |
| **Entity Served:** | State Farm Mutual Automobile Insurance Company |
| **Title of Action:** | Pasha Iqbal vs. State Farm Mutual Automobile Insurance Company |
| **Matter Name/ID:** | Pasha Iqbal vs. State Farm Mutual Automobile Insurance Company (14047818) |
| **Document(s) Type:** | Citation/Petition |
| **Nature of Action:** | Contract |
| **Court/Agency:** | Bexar County District Court, TX |
| **Case/Reference No:** | 2023CI08776 |
| **Jurisdiction Served:** | Texas |
| **Date Served on CSC:** | 05/10/2023 |
| **Answer or Appearance Due:** | 10:00 am Monday next following the expiration of 20 days after service |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Tyler & Peery<br>210-340-0900 |

**Notes:**    Document is as it was served on CSC

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**DELIVERED**

_5_ / _10_ / _2023_

BY: ~~DAS~~   PSC: 714

ATX Process, LLC

PRIVATE PROCESS

Case Number: **2023CI08776**

Pasha  Iqbal ET AL VS State Farm Mutual
Automobile Insurance Company ET AL
(Note: Attached Document May Contain Additional
Litigants)

IN THE 150TH DISTRICT COURT

BEXAR COUNTY, TEXAS

**CITATION**

"THE STATE OF TEXAS"

Directed To:   **State Farm Mutual Automobile Insurance Company**
**By serving its registered agent Corporation Service Company**

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00am on the Monday next following the expiration of twenty days after you were served this CITATION and PETITION a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org" Said **Plaintiffs' Original Petition** was filed **on this the 2nd day of May, 2023.**
ISSUED UNDER MY HAND AND SEAL OF SAID COURT **on this the 5th day of May, 2023.**

R. Craig Bettis
**ATTORNEY FOR PLAINTIFF**
5822 West IH-10
San Antonio, TX 78201



Gloria A. Martinez
**Bexar County District Clerk**
101 W. Nueva, Suite 217
San Antonio, Texas 78205
By: /s/ ~~Madison Gamache~~
Madison Gamache, Deputy

---

PASHA  IQBAL ET AL VS STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY ET AL

Case Number: 2023CI08776

Court: 150th District Court

**Officer's Return**

I received this CITATION on the _____ day of _____, 20_____ at _____ o'clock ____M. and ( ) executed it by delivering a copy of the CITATION with attached **PLAINTIFFS' ORIGINAL PETITION** the date of delivery endorsed on it to the defendant _____ in person on the _____ day of _____, 20____ at _____ o'clock _____ M.

at _____ City_____ State_____ Zip_____

or ( ) not executed because _____.

Fees: _____ Badge/PPS #: _____ Date certification expires: _____

_____ County, Texas

BY:_____

OR: VERIFICATION OF RETURN (If not served by a peace officer) SWORN TO THIS _____

_____

**NOTARY PUBLIC, STATE OF TEXAS**

OR: My name is _____, my date of birth is _____, and my address is _____ County.

I declare under penalty of perjury that the foregoing is true and correct. Executed in _____ County, State of Texas, on the _____ day of _____, A.D., _____.

_____
**Declarant**

FILED
5/2/2023 4:31 PM
Gloria A. Martinez
Bexar County District Clerk
Accepted By: Elvira Ramirez
Bexar County - 150th District Court

CAUSE NO. **2023CI08776**

| | | |
|---|---|---|
| PASHA IQBAL | § | IN THE DISTRICT COURT |
| AND SARA IQBAL | § | |
| | § | |
| VS. | § | _____ JUDICIAL DISTRICT |
| | § | |
| STATE FARM MUTUAL AUTOMOBILE | § | |
| INSURANCE COMPANY AND STATE | § | |
| FARM, AN ASSUMED OR COMMON | § | |
| NAME | § | BEXAR COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES **Plaintiffs, PASHA IQBAL and SARA IQBAL,** complaining of

**Defendants, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and**

**STATE FARM, AN ASSUMED OR COMMON NAME,** and for cause of action would

respectfully show the Court as follows:

### I. LEVEL 3

1.      Pursuant to Rule 190 and its subparts of the Texas Rules of Civil Procedure, discovery is

intended to be conducted under Level 3 of this Rule. At this time, **Plaintiffs** "seeks monetary relief

over $250,000.00 but not more than $1,000,000.00" from the Tortfeasor (as defined in below) out of

which the amount in controversy which **Plaintiffs** seeks herein is $50,000.00 each from **Defendants,**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and STATE FARM,**

**AN ASSUMED OR COMMON NAME** from their Underinsured Motorist Policy limits, excluding

costs, prejudgment interest and attorneys' fees. In addition, **Plaintiffs** demands judgment for all the

other relief to which **Plaintiffs** deems themselves entitled.

### II. PARTIES

2.      **Plaintiff, PASHA IQBAL,** is an individual residing in Texas. The last three digits of his

social security number are 728 and the last three digits of his Texas Driver's license are 401.

3.      **Plaintiff, SARA IQBAL**, is an individual residing in Texas. The last three digits of her social security number are 964.

4.      **Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY** is an insurance company licensed to do business in Texas, whose home office and principal place of business and mailing address is One State Farm Plaza D2, Bloomington, IL 61710-0001. Defendant may be served with notice of this pleading by serving a true and correct copy of it upon their registered agent for service of process: Corporation Service Company, 211 E. 7th St., Ste. 620, Austin, TX 78701, or may be served with process at any other place and in any manner authorized by the Texas Rules of Civil Procedure.

5.      **Defendant, STATE FARM, AN ASSUEMD OR COMMONE NAME** is an insurance company licensed to do business in Texas, whose home office and principal place of business and mailing address is One State Farm Plaza D2, Bloomington, IL 61710-0001. **Defendant STATE FARM** may be served with process by serving its principal agent for service or its President and Chief Executive Officer, Michael L. Tipsord, at One State Farm Plaza D2, Bloomington, IL 61710-0001 or may be served with process at any other place and in any manner authorized by the Texas Rules of Civil Procedure.

6.      **Defendant STATE FARM MUTUAL AUTOMOBILE INSURNACE COMPANY and Defendant STATE FARM, AN ASSUEMD OR COMMONE NAME** (hereinafter referred to as **"Defendant STATE FARM"),** pursuant 28 U.S.C. § 1332(1), is an insurer of a policy of liability insurance which is the subject of this suit and is therefore deemed a citizen of the State of Texas because **Plaintiffs** are its insured, and **Plaintiffs** are citizens of the State of Texas.

### III. VENUE

7.      Venue is proper in Bexar County, Texas pursuant to V.T.C.A., Civil Practice and Remedies Code, §15.001, et seq in that the cause of action accrued and occurred in Bexar County, Texas. Venue

is also proper in Bexar County, Texas, because all or a part of the insurance policy and the terms and requirements therein, the subject of this suit, was to be performed or performable in Bexar County, Texas.

## IV.  FACTS

8.     On or about June 18, 2021, **Plaintiffs, PASHA IQBAL and SARA IQBAL,** were traveling on a roadway in San Antonio, Bexar County, Texas. On that same date, Emily Santiago, herein referred to as the "Tortfeasor", was operating a vehicle on the same roadway when she failed to control her speed and failed to yield the right of way while making an unsafe lane change causing collision with the vehicle occupied by **Plaintiffs**. *See* EXHIBIT 1, a true and correct copy of the Texas Peace Officer's Crash Report, which is attached hereto and incorporated herein as though fully set forth verbatim. As a result of the collision described above, **Plaintiffs** suffered and sustained severe bodily injuries and damages to their person, body generally, and property, and for which sums **Plaintiffs** now sue.

9.     **Plaintiffs** would further show that at the times and places in question, Tortfeasor was guilty of acts of omission and commission which constituted negligence and negligence per se and was the proximate cause or causes of the incident in question and of the serious bodily injuries and property damage to **Plaintiffs,** for which sum **Plaintiffs** herein now sue and for which sums said **Defendants** are liable, jointly and severally.

## V. NEGLIGENCE OF THE TORTFEASOR

10.     Pleading further, but not by way of limitation, and adopting paragraphs 1-9 above as though fully set forth verbatim, the Tortfeasor was negligent in that he violated the duty which she owed **Plaintiffs** to exercise ordinary care in the operation of a motor vehicle in one or more of the following particulars:

a)  By failing to drive a motor vehicle in a single lane of traffic when it was unsafe to change lanes;

b)  By failing to yield the right of way to Plaintiffs;

c)  By being inattentive while operating a motor vehicle and colliding a motor vehicle into the vehicle operated/occupied by Plaintiffs;

d)  By failing to keep such lookout that a person of ordinary prudence would have kept under the same or similar circumstances and colliding a motor vehicle into the vehicle operated by/occupied by Plaintiffs;

e)  By failing to apply or timely apply the brakes to a motor vehicle and colliding said vehicle into the vehicle operated by/occupied by Plaintiffs;

f)  By driving at an excessive or unreasonable rate of speed such that she was unable to stop or prevent the motor vehicle she was operating from colliding into the vehicle operated by/occupied by Plaintiffs;

g)  By failing to control the speed of her vehicle as necessary to avoid colliding with another person or vehicle that is on the highway or roadway or an intersecting road or highway;

h)  Bn failing to drive safely by colliding a motor vehicle into the vehicle operated by/occupied by Plaintiffs;

i)  By failing to drive safely;

j)  While following behind Plaintiffs, the Tortfeasor failed to maintain an assured clear distance between the motor vehicle she was operating and the vehicle operated by/occupied by Plaintiffs so that she could safely stop said vehicle without colliding into Plaintiffs;

k)  While following behind Plaintiffs, the Tortfeasor breached the duty to use due care by failing to control the speed of her vehicle as necessary to avoid colliding with another person or vehicle that is on the highway or roadway;

l)  By failing to stop at the proper place; and

m) In failing to turn her vehicle to avoid a collision.

Each of such acts and omissions, singularly or in combination with others, constitute negligence which proximately caused the collision and the injuries and damages which **Plaintiffs** suffered, and for such injuries and damages **Plaintiffs** herein now sues and for such sums the Tortfeasor is liable.

## VI.  NEGLIGENCE PER SE OF THE TORTFEASOR

11.    Pleading further, but not by way of limitation, and adopting paragraphs 1-10 above as though fully set forth verbatim, the Tortfeasor was negligent per se on the date in question by engaging in conduct in violation of the following statutes, to wit:

(a)    Texas Transportation Code § 545.060, by failing to drive as nearly as practical entirely within a single lane and by moving from her lane when said movement could not be made safely;

(b)    Texas Transportation Code § 545.062, by failing to maintain an assured clear distance between the Tortfeasor's vehicle and Plaintiffs' vehicle while following behind Plaintiffs' vehicle such that the Tortfeasor was unable to safely stop without colliding with the vehicle operated by/occupied by Plaintiffs;

(c)    Texas Transportation Code § 545.103, by turning her vehicle from a direct course, or moving right or left on a roadway when said movement could not be made safely;

(d)    Texas Transportation Code § 545.351, by failing to control the speed of a vehicle as necessary to avoid colliding with another person or vehicle that is on or entering the highway in compliance with law and by breaching the duty of each person to use due care; and,

(e)    Violation of Section 545.401 of the Texas Transportation Code (Reckless driving— the third-party Tortfeasor's vehicle was driven or operated in willful or wanton disregard for the safety of persons or property);

Each of such acts and omissions, singularly or in combination with others, constitute negligence per se which proximately caused the collision and the injuries and damages which Plaintiffs suffered, and for such injuries and damages **Plaintiffs** herein now sues and for such sums the Tortfeasor is liable. The statutes cited above are intended to protect a class of persons of which **Plaintiffs** are members. The statutory violations identified above constitute negligence per se.

## VII.  DAMAGES CAUSED BY TORTFEASOR

12.    **Plaintiffs Damages:** (a)  Pleading further, but not by way of limitation, and adopting paragraph 1-11 above as though fully set forth verbatim, **Plaintiffs** would further show that all

damages are in excess of the minimal jurisdictional limits of this Court. **Plaintiffs** would further show the amount of damages in this case is best left to the discretion of the jury after all of the evidence is presented at trial. Damages to **Plaintiffs** are as set forth below include, but are not limited to:

      a.    expenses for medical treatment, care, pharmacy, nursing and equipment in the past and into the future;

      b.    physical pain and suffering and mental anguish in the past and into the future;

      c.    physical impairment in the past and into the future;

      d.    disfigurement in the past and into the future;

      e.    past and future loss of earning capacity and lost wages; and

      f.    cost of repairs and loss of use of the vehicle driven by Plaintiff and/or the difference in the market value of the vehicle driven by Plaintiff immediately before and immediately after the collision the subject of this suit, and the diminished value of Plaintiff's vehicle after repairs of the vehicle, and reasonable and necessary transportation expenses.

All of said damages are a direct and proximate result of Tortfeasor's negligence and negligence per se.

(b) **Texas Rules of Civil Procedure - Rule 47:**  Rule 47 of the Texas Rules of Civil Procedure now requires an injured party to bracket their harms and losses caused by the negligence of the Defendants. Therefore, to comply with Rule 47 of the Texas Rules of Civil Procedure, **Plaintiffs** pled in paragraph above the following statement "Plaintiff seeks monetary relief over $250,000.00 but not more than $1,000,000.00" for their harms and losses caused by the negligence of the Tortfeasor. **Plaintiffs** would like the jury to understand that **Plaintiffs** believes that the amount of their harms and losses caused by the Tortfeasor's unnecessarily dangerous conduct should be strictly determined by the ladies and gentlemen of the jury without being improperly influenced by this arbitrary dollar bracket. **However, the amount in controversy as to Defendant, STATE**

**FARM is $50,000.00 per Plaintiff from their Underinsured Motorist policy limit issued by Defendant STATE FARM to Plaintiffs**, excluding costs, prejudgment interest and attorneys' fees. In addition, **Plaintiffs** demands judgment for all the other relief to which **Plaintiffs** deems themselves entitled.

## VIII.  DEFENDANT STATE FARM UNDERINSURED MOTORIST COVERAGE

13.     At the time of the accident the subject of this suit, the vehicle owned and operated by **Plaintiffs**, a 2016 Dodge Grand Caravan, VIN NO. 2C4RDGBG8GR227323, was protected against loss for bodily injury and property damage, resulting from the ownership, maintenance, or use of an underinsured motor vehicle by a policy of insurance, policy number 262 6683-C05-530, issued by **Defendant STATE FARM** to **Plaintiffs**. See a true and correct copy of **Defendant STATE FARM's** Confirmation of Coverage attached as <u>EXHIBIT 2</u> attached hereto and incorporated herein by reference as though fully set forth verbatim. This policy is hereafter referred to as the "UM/UIM policy".

14.     **Plaintiffs** personal auto policy provided $50,000.00 per person, $100,000.00 per accident, in UM/UIM benefits at the time of collision.

15.     The UM/UIM policy provides **Defendant STATE FARM** will pay **Plaintiffs** (a covered person) damages which **Plaintiffs** are legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by **Plaintiffs** caused by an accident. **Plaintiffs** are both a "covered" person as that term is defined in the UM/UIM policy.

16.     On or about August 11, 2021, **Plaintiffs** timely notified **Defendant STATE FARM** they were involved in the subject motor vehicle collision, and that they were injured as a result of the collision. See <u>EXHIBIT 3</u> attached hereto, a true and correct copy of letter dated August 11, 2021, which is incorporated herein by reference as though fully set forth verbatim.

17.     Thereafter, on or about February 9, 2022, **Plaintiffs** requested permission to settle with the Tortfeasor for the limits of the Tortfeasor's liability policy. See EXHIBIT 4 attached hereto, a true and correct copy of letter dated February 9, 2022, which is incorporated herein by reference as though fully set forth verbatim.

18.     Thereafter, on or about February 22, 2022, and December 29, 2022, **Defendant STATE FARM** granted **Plaintiffs** permission to settle their claim against the Tortfeasor. See EXHIBIT 5 attached hereto, a true and correct copy of letter dated February 22, 2022, and December 29, 2022, which is incorporated herein by reference as though fully set forth verbatim.

19.     Thereafter, on or about December 22, 2022, and January 11, 2023, **Plaintiffs** timely notified **Defendant STATE FARM** in writing that they were _formally_ making an UM/UIM claim under the policy and timely provided to **Defendant STATE FARM** true and correct copies of **Plaintiffs'** medical records and bills. These included medical records showing **Plaintiff Pasha Iqbal's** past paid and incurred medical bills were in excess of $20,234.00, and documentation that **Plaintiff Pasha Iqbal** medically needs a cervical spine and left shoulder surgeries and related treatments, _the future costs of which exceed $373,787.15_. See EXHIBIT 6 attached hereto, a true and correct copy of **Plaintiff Pasha Iqbal's** UM/UIM Demand letter dated December 22, 2022, which is incorporated herein by reference as though fully set forth verbatim.

20.     These also included medical records showing **Plaintiff Sara Iqbal's** past paid and incurred medical bills were in excess of $44,834.00. See EXHIBIT 7 attached hereto, a true and correct copy of UM/UIM Demand letter dated January 11, 2023, which is incorporated herein by reference as though fully set forth verbatim.

21.     On or about January 23, 2023, and January 31, 2023, **Defendant STATE FARM** acknowledged receipt of **Plaintiffs'** demand for the UM/UIM policy limits. See EXHIBIT 8 attached hereto, a true and correct copy of **Defendant's** Letter dated January 23, 2023, and January

31, 2023, which is incorporated by reference herein as though fully set forth verbatim. **Defendant STATE FARM** requested additional documentation despite having been provided all of **Plaintiffs'** medical and billing records in **Plaintiffs'** UM/UIM Demand Letters dated December 22, 2022, and January 31, 2023, See *Id;* see also EXHIBIT 6, 7.

22.     On or about February 17, 2023, **Plaintiffs** responded to a request for information from **Defendant STATE FARM** stating that **Plaintiffs** had already provided **Defendant STATE FARM** with all the medical records and bills for **Plaintiffs'** treatment, reiterated what records and bills had been sent and when, and additionally provided **Defendant STATE FARM** and again demanded the UM/UIM policy limits. See EXHIBIT 9 attached hereto, a true and correct copy of letter dated February 17, 2023, which is incorporated herein by reference as though fully set forth verbatim.

23.     On or about April 11, 2023, **Defendant STATE FARM,** *__in a bad faith attempt to attempt to delay payment__* of **Plaintiffs'** properly presented claim, requested medical records and bills which they had previously been provided. See EXHIBITS 10 attached hereto, a true and correct copy of letter dated April 11, 2023, and which is incorporated herein by reference as though fully set forth verbatim; see also EXHIBITS 6, 7.  **Defendant STATE FARM** failed to tender the UM/UIM policy limits.

24.     On or about the same date, March 27, 2023, **Plaintiffs** responded to **Defendant STATE FARM** stating that said insurer had all the necessary information and documents required to evaluate and approve **Plaintiffs'** UM/UIM claim, and **Plaintiffs'** demands for the UM/UIM policy limits. See EXHIBIT 11 attached hereto, and which is incorporated herein by refence as though fully set forth verbatim.

25.     At the time of the subject motor vehicle collision, the "motor vehicle" operated by the Tortfeasor was "uninsured" or "underinsured" as those terms are defined in the subject UM/UIM

policy because the Tortfeasor carried insufficient liability insurance coverage through GEICO Insurance Company at the time of the collision to fully compensate **Plaintiffs** for their damages, and **Plaintiffs'** injuries and damages far exceed the combined sum of the Tortfeasor's liability policy limits of $30,000.00/$60,001.00, **Plaintiff's** $2,500.00 per person Personal Injury Protection benefits and **Plaintiffs'** $50,000.00/$100,000.00 UM/UIM policy limits. It has now been over 120 days since **Plaintiffs** submitted their UM/UIM claim the damages of which far exceed the combined sum of the Tortfeasor's bodily injury liability policy limits plus the UM/UIM policy limits, and **Defendant STATE FARM** has not tendered the UM/UIM policy limits.

26. **Defendant STATE FARM** knew or should have known of the extreme anxiety, disruption, disturbance, mental anguish and financial deprivation that withholding benefits under the UM/UIM policy would cause or likely cause **Plaintiffs**. Nevertheless, **Defendant STATE FARM** recklessly or intentionally chose not to tender and pay the full amount of the UM/UIM benefits, despite the fact liability was reasonably clear (no bona-fide dispute) and **Plaintiffs** injuries and damages were reasonably clear (no bona-fide dispute). The bad faith handling of **Plaintiffs'** claim was extreme and outrageous in that it forced **Plaintiffs** to contemplate financial ruin as a result of **Defendant STATE FARM'S** actions. The improper denial of **Plaintiffs'** UM/UIM claim forced **Plaintiffs** to file this lawsuit and will force them to go to trial to obtain the UM/UIM benefits due them and caused and will continue to cause **Plaintiffs** a substantial disruption to their daily routine, activities and life. A reasonable person faced with similar circumstances would likely react similarly or the same, and it's reasonably foreseeable that the conduct of **Defendant STATE FARM** would cause this reaction in **Plaintiffs. Plaintiffs** suffered and continues to suffer a severe interruption in their daily routine, activities and life, which includes but is not limited to sleeplessness or limited sleep prior to the filing of this suit and during the pendency of this lawsuit through trial. **Plaintiffs** fret constantly about the outcome of the trial,

or grapple with the fact that they would otherwise likely be unable to ever afford to be able to have the surgical procedure opined to be medically necessary in the course of their life. This severe emotional distress is attributable solely to **Plaintiffs'** worries about the lawsuit and trial and its implications for their future health and general wellbeing. It is reasonably foreseeable that an average person would experience severe distress at the prospect of financial ruin such as the type contemplated by **Plaintiffs**, and equally reasonable for **Plaintiffs** to experience such a substantial disruption as a reaction to his impending financial hardship arising from **Defendant STATE FARM** bad faith conduct.

### IX. SUIT FOR DECLARATORY JUDGEMENT

27.     Pleading further, and not by way of limitation, and adopting paragraphs 1-26 as though fully set forth herein, having determined that Tortfeasor at the time of the occurrence described above, operated an uninsured/underinsured motor vehicle, as those terms are defined in the UM/UIM policy the subject of this suit, **Plaintiffs** timely and properly notified **Defendant STATE FARM** of the collision. **Plaintiffs** have fully cooperated with **Defendant STATE FARM** and have fully complied with all the conditions of the subject UM/UIM insurance policy prior to bringing this suit. All conditions precedent have been performed and/or have occurred and/or have been waived by **Defendant STATE FARM. Plaintiffs** provided **Defendant STATE FARM** with all documentation, records, bills and expenses necessary for **Defendant STATE FARM** to accept or reject the UM/UIM claim. **Plaintiffs** provided all information requested by **Defendant STATE FARM**. **Plaintiffs** provided **Defendant STATE FARM** with all of their medical records, both pre-collision and post collision, and past paid or incurred medical bills. **Defendant STATE FARM** timely received all medical records, medical bills and all other items or documents it needed to process and make an offer of settlement under the UM/UIM policy. **Defendant STATE FARM** has not requested any additional items. **Defendant STATE FARM** has refused and continues to refuse to pay **Plaintiffs** the full

amount of their available contractual UM/UIM benefits provided for as per the insuring agreement set forth in the UM/UIM policy. **Plaintiffs** therefore additionally sues for declaratory relief for a determination of liability of Tortfeasor and a determination of the UM/UIM damages **Plaintiffs** are legally entitled to recover from the Tortfeasor (*the owner or operator of an uninsured/underinsured motor vehicle*) because of the bodily injuries sustained by **Plaintiffs** (*a covered person(s)*) caused by an accident (*the motor vehicle crash the subject of this suit*), and which amount of damages **Defendant STATE FARM** must pay in UM/UIM benefits/damages to **Plaintiffs** pursuant to the insuring agreement set forth in the UM/UIM policy the subject of this suit.

28.    Pleading further, and not by way of limitation, based on the foregoing facts, and pursuant to the policy of insurance (*the UM/UIM policy*) in force and effect between **Plaintiffs** and **Defendant STATE FARM** at the time of the subject motor vehicle collision, **Plaintiffs** also seeks a declaratory judgment pursuant to the Texas Declaratory Judgment Act, TEX. CIV. PRAC. & REM. CODE Ch. 37 to establish the prerequisites to recover in a UM/UIM case including but not limited to the liability of Tortfeasor and the amount of damages which **Plaintiffs**, both a "covered" persons, are legally entitled to recover from the Tortfeasor, the owner or operator of an uninsured motor vehicle or under insured motor vehicle, because of bodily injury sustained by **Plaintiffs**, both a "covered" person, caused by the subject accident, and which **Defendant STATE FARM** must contractually pay per the insuring agreement set forth in the UM/UIM policy, and that those damages fall within the coverage afforded **Plaintiffs** under the UM/UIM policy issued by **Defendant STATE FARM**, and specifying the amount of damages, attorney fees, interest, and court costs that **Defendant STATE FARM** is obligated to pay.

## X.  CLAIM FOR CONTRACTUAL BENEFITS UNDER THE UM POLICY

29.    Having determined that the Tortfeasor at the time of the occurrence described above, operated an uninsured motor vehicle, as those terms are defined in the subject Uninsured Motorist policy the

subject of this suit, **Plaintiffs** timely and properly notified **Defendant STATE FARM** of the collision. **Plaintiffs** have fully cooperated with **Defendant STATE FARM** and have fully complied with all the conditions of the subject UM/UIM insurance policy prior to bringing this suit. All conditions precedent have been performed and/or have occurred and/or have been waived by **Defendant STATE FARM**. **Plaintiffs** timely notified **Defendant STATE FARM** of the accident. **Plaintiffs** provided **Defendant STATE FARM** with all documentation, records, bills and expenses necessary for **Defendant STATE FARM** to accept or reject the UM/UIM claim. **Plaintiffs** provided all information requested by **Defendant STATE FARM**. **Plaintiffs** provided **Defendant STATE FARM** with all of their medical records and medical bills. **Defendant STATE FARM** timely received all medical records, medical bills and all other items or documents it needed to process and make an offer of settlement under the UM/UIM policy.

30.     As a direct and proximate result of the conduct of Tortfeasor's negligence, negligence per se, and gross negligence, and because there is insufficient liability insurance coverage available to Tortfeasor, **Plaintiffs** are legally entitled to the contractual benefits available or due under the UM/UIM policy for their actual damages.

31.     Pursuant to the UM/UIM policy, **Plaintiffs** seeks a judicial determination of their damages/benefits due under the policy which **Defendant STATE FARM** must contractually pay to **Plaintiffs** pursuant to the contractual terms of the UM/UIM policy proximately caused by the subject collision which **Plaintiffs** are legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by them, a covered person. In this respect, and not by way of limitation, **Plaintiffs** seeks a judicial determination that (1) **Plaintiffs** suffered bodily injury damages as a result of the subject motor vehicle collision; (2) **Plaintiffs** suffered and incurred reasonable medical bills and necessary medical treatment and will incur reasonable and necessary medical treatment and medical bills in the future as a result of the motor vehicle collision; (3)

Plaintiffs are a covered person under the subject UM/UIM policy carried with **Defendant STATE FARM**; (4) **Plaintiffs** are legally entitled to recover from the owner or operator of an "uninsured motor vehicle" and/or "underinsured motor vehicle" because of bodily injury and lost earning capacity or wages sustained by **Plaintiffs**, and caused by the subject collision; (5) that the owner's or operator's liability for these damages arise out of the ownership, maintenance or use of the "uninsured motor vehicle"; and (7) the amount of **Plaintiffs'** actual and contractual bodily injury damages and property damages due under the subject UM/UIM policy.

## XI. DAMAGES AS DEFENDANT STATE FARM

32. Pleading further, but not by way of limitation, and adopting paragraphs 1-31 above as though fully set forth verbatim, **Plaintiffs** would further show that all damages are in excess of the minimal jurisdictional limits of this Court. At this time, in additional to all *actual damages* **Plaintiffs** have pled for above, **Plaintiffs** also seek monetary damages against **Defendant STATE FARM** for damages for breach of duty good faith and fair dealing, violations of the Texas Insurance Code and violations of the Texas Deceptive Trade Practices Act. **Plaintiffs** would further show the amount of damages in this case is best left to the discretion of the jury after all of the evidence is presented at trial.

33. Such additional damages include, but are not limited to past and future mental anguish, medical expenses, physical impairment, loss of earnings capacity, and pain and suffering caused by the failure to timely pay the UM/UIM policy limits when it was reasonably clear the benefits should be paid and there was no bona-fide dispute as to liability or damages; additional litigation and expert expenses, including but not limited to attorney's fees, that are or were necessary due to the unreasonable delay and refusal to pay the UM/UIM policy limits after it became **reasonably clear** the benefits should have been paid and there was no bona-fide dispute as to liability and damages, additional damages up to three times the amount of actual damages pursuant to **Tex. Ins.**

Code Sec. 541.152 (b), and reasonable attorney's fees pursuant to the Texas Ins. Code. Sec. 541.152 (a) (1), 542.060 (b), Tex. Civil Practices Rem. Code Sec. 38.001 and the Uniform Declaratory Judgment Act (UDJA) Texas Civil Practice and Remedies Code §37.001 et al., as well as interest and exemplary damages for breach of the duty of good faith and fair dealing (statutory and common law). All of **Defendant STATE FARM's** actions described herein are a direct, proximate and producing cause of **Plaintiffs'** damages.

## XII. ATTORNEY'S FEES, INTEREST, AND COSTS

34.    It was necessary for **Plaintiffs** to retain the services of TYLER & PEERY Law Firm to represent them in this matter to pursue a determination of their contractual benefits under the UM/UIM policy and to pursue their extra-contractual damage claims. **Plaintiffs** have been compelled to engage the services of the attorney whose name is subscribed to this pleading for the prosecution and collection of the claims. **Plaintiffs** are entitled to recover attorney fees pursuant to Texas Ins. Code. Sec. 541.152 (a) (1), 542.060 (b), Tex. Civil Practices Rem. Code Sec. 38.001 and the Uniform Declaratory Judgment Act (UDJA) Texas Civil Practice and Remedies Code §37.001 et al. **Plaintiffs** seek a reasonable sum for the necessary services of **Plaintiffs'** attorneys in the preparation and trial of this lawsuit, including any appeals to the Court of Appeals or the Supreme Court of Texas.

## XIII.  CONDITIONS PRECEDENT AS TO DEFENDANT STATE FARM

35.    As to **Defendant STATE FARM,** all conditions precedent have been performed and/or have occurred as to all of **Plaintiffs'** claims.

## XIV.  INTEREST

36.    **Plaintiffs** seek pre-judgment and post judgment interest at the maximum rate statutorily allowable under Texas laws.

## XV.  NOTICE OF INTENTION TO USE DOCUMENTS AND TANGIBLE ITEMS

37.   **Plaintiffs** are providing this Notice pursuant to Rule 193.7 of the Texas Rule of Civil Procedure that they intend to use the documents and tangible items produced by any and all **Defendants** herein in their answers and responses to Interrogatories, Request for Production, Request for Disclosure, and against **Defendants** at trial, including but not limited to the medical records, medical bills, expert witness reports, expert witness correspondence, employment records, the Texas Peace Officer's Crash Report, recorded statements, photographs, cellular phone records and video of the collision.

## XVI. JURY DEMAND

38.   **Plaintiffs** demand a trial by jury. All conditions precedent have been performed and/or have occurred as to all of Plaintiffs' claims.

## XVII.   PRAYER

WHISEFORE, PREMISES CONSIDERED, Plaintiffs requests that **Defendant STATE FARM** be cited to appear and answer, and that on final trial, **Plaintiffs** recover against **Defendant STATE FARM**:

      a.    actual damages in a sum in excess of the minimum jurisdictional limits of the Court;

      b.    declaratory relief for a determination of contractual benefits UM/UIM equal to the policy limits of the coverage;

      c.    attorney's fees if Plaintiff is required to prove up facts denied by Defendant(s) in response to requests for admission, if applicable;

      d.    reasonable and necessary attorney fees and appellate fees should the case be appealed or certiorari granted by the Texas Supreme Court;

      e.    declaratory relief as pled including attorney's fees and interest;

      f.    interest before and after judgment at the legal rate, including statutory interest for the late payment of claims;

g.      costs of suit; and,

h.      such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

TYLER & PEERY
5822 WEST IH-10
San Antonio, TX  78201
TELEPHONE (210) 340-0900
FACSIMILE (210) 736-9197

R. CRAIG BETTIS
Email: cbettis@tylerpeery.com
State Bar No. 24040518

ATTORNEYS FOR PLAINTIFF

Page 17 of 17

# EXHIBIT 1



**Texas Department of Transportation**

125 EAST 11TH STREET, AUSTIN, TEXAS 78701-2483 | 512.463.8588 | WWW.TXDOT.GOV

Wed, 07 July 2021

STATE OF TEXAS          §

This is to certify that I, Jim Hollis, am employed by the Texas Department of
Transportation (Department); that I am the Custodian of Motor Vehicle Crash Records for
such Department; that the attached is a true and correct copy of the peace officer's report
filed with the Department referred to in the attached request with the crash date of Fri, 18
June 2021, which occurred in Comal County; that the investigations of motor vehicle
crashes by peace officers are authorized by law; that this Texas Peace Officer's Crash
Report is required by law to be completed and filed with this Department; that this report
sets forth matters observed pursuant to duty imposed by law as to which matters there
was a duty to report, or factual findings resulting from an investigation made pursuant to
authority granted by law.



Jim Hollis
Director, Crash Data & Analysis Section
125 East 11th Street
Austin, TX  78701-2483
1-844-274-7457

OUR VALUES: *People • Accountability • Trust • Honesty*
OUR MISSION: *Connecting You With Texas*

An Equal Opportunity Employer

Law Enforcement and TxDOT Use ONLY

☐ FATAL   ☐ CMV   ☐ SCHOOL BUS   ☐ RAILROAD   ☐ MAB   ☐ SUPPLEMENT   ☐ ACTIVE SCHOOL ZONE

| Total Num. Units | | Total Num. Prsns. | 3 | TxDOT Crash ID | 18334526.1 /2021284002 |

**Texas Peace Officer's Crash Report (Form CR-3 1/1/2018)**
Mail to: Texas Department of Transportation, Crash Data and Analysis, P.O. Box 149349, Austin, TX 78714.  Questions? Call 844/274-7457
Refer to Attached Code Sheet for Numbered Fields
*=These fields are required on all additional sheets submitted for this crash (ex.: additional vehicles, occupants, injured, etc.).

Page 1 of 2

## IDENTIFICATION & LOCATION

| *Crash Date (MM/DD/YYYY) | 06/18/2021 | *Crash Time (24HRMM) | 2007 | Case ID | 21-06-3337 | Local Use | |

| *County Name | COMAL | *City Name | | ☒ Outside City Limit |

| In your opinion, did this crash result in at least $1,000 damage to any one person's property? | ☒ Yes ☐ No | Latitude (decimal degrees) | 29.7574 0 | Longitude (decimal degrees) | 098.0 5071 |

**ROAD ON WHICH CRASH OCCURRED**

| *1 Rdwy. Sys. | IH | *Hwy. Num. | 35S | 2 Rdwy. Part | 1 | Block Num. | 5000 | 3 Street Prefix | S | *Street Name | IH35 | 4 Street Suffix | HWY |

| ☐ Crash Occurred on a Private Drive or Road/Private Property/Parking Lot | ☐ Toll Road/ Toll Lane | Speed Limit | 60 | Const. Zone | | Workers Present | ☒ Yes ☐ No | ☒ Yes ☐ No | Street Desc. MAIN ROAD |

**INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER**

| At Int. | ☐ Yes ☒ No | Hwy. Sys. | LR | Hwy. Num. | | 2. Rdwy. Part | 4 | Block Num. | 100 | 3 Street Prefix | W | Street Name | CONRADS | 4 Street Suffix | LN |

| Distance from Int. or Ref. Marker | 1 | ☐ FT ☒ MI | 3 Dir. from Int. or Ref. Marker | S | Reference Marker | | Street Desc. EXIT ACCESS RD | RRX Num. | |

## VEHICLE, DRIVER, & PERSONS

| Unit Num. | 1 | 5 Unit Desc. | 1 | ☐ Parked Vehicle | ☐ Hit and Run | LP State | TX | LP Num. NBX0204 | VIN | KMHEC4A4XCA03153 |

| Veh. Year | 2012 | 6. Veh. Color | SIL | Veh. Make | HYUNDAI | Veh. Model | ELANTRA | 7 Body Style | P4 | ☐ Pol., Fire, EMS on Emergency (Explain In Narrative if checked) |

| 8 DL/ID Type | 1 | DL/ID State | TX | DL/ID Num. | 40078277 | 9 DL Class | C | 10 CDL End. | 96 | 11 DL Rest. | 96 | DOB (MM/DD/YYYY) | 04/07/2000 |

| Address (Street, City, State, ZIP) | 416 WAGON WHEEL WAY CIBOLO, TX 78108 |

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle — Enter Driver or Primary Person for this Unit on first line | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec | 24 Drug Result | 25 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | SANTIAGO, EMILY | N | 21 | H | 2 | 1 | 1 | 1 | 1 | N | 97 | | 96 | 97 | 97 |
| | | | | | | | | | | | | | | Not Applicable - Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit. | | | |

| ☒ Owner ☐ Lessee | Owner/Lessee Name & Address | SANTIAGO, EMILY, 416 WAGON WHEEL WAY CIBOLO, TX 78108 |

| Proof of Fin. Resp. | ☒ Yes ☐ No | ☐ Expired ☐ Exempt | 26 Fin. Resp. Type | 2 | Fin. Resp. Name | GEICO | Fin. Resp. Num. | 4546619901 |

| Fin. Resp. Phone Num. | 18008413000 | 27 Vehicle Damage Rating 1 | F R - 4 | 27 Vehicle Damage Rating 2 | | Vehicle Inventoried | ☐ Yes ☒ No |

| Towed By | | Towed To | |

---

| Unit Num. | 2 | 5 Unit Desc. | 1 | ☐ Parked Vehicle | ☐ Hit and Run | LP State | TX | LP Num. JFM7595 | VIN | 2C4RDGBG8GR232123 |

| Veh. Year | 2016 | 6. Veh. Color | RED | Veh. Make | DODGE | Veh. Model | GRAND CARAVAN | 7 Body Style | VN | ☐ Pol., Fire, EMS on Emergency (Explain In Narrative if checked) |

| 8 DL/ID Type | 1 | DL/ID State | TX | DL/ID Num. | 17809401 | 9 DL Class | C | 10 CDL End. | 96 | 11 DL Rest. | 96 | DOB (MM/DD/YYYY) | 10/21/1957 |

| Address (Street, City, State, ZIP) | 12904 GORDON HAVEN  SAN ANTONIO, TX 78253 |

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle — Enter Driver or Primary Person for this Unit on first line | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec | 24 Drug Result | 25 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | IQBAL, PASHA MOHAMMED | N | 63 | 98 | 1 | 1 | 1 | 97 | N | 96 | | 96 | 97 | 97 |
| 2 | 2 | 3 | IQBAL, SARA PARVEEN | B | 53 | 98 | 2 | 1 | 1 | 97 | N | | Not Applicable - Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit. | | | |

| ☒ Owner ☐ Lessee | Owner/Lessee Name & Address | IQBAL, PASHA MOHAMMED, 12904 GORDON HAVEN, SAN ANTONIO, TX 78253 |

| Proof of Fin. Resp. | ☒ Yes ☐ No | ☐ Expired ☐ Exempt | 26 Fin. Resp. Type | 2 | Fin. Resp. Name | STATEFARM | Fin. Resp. Num. | 2626683C05530 |

| Fin. Resp. Phone Num. | 216700000 | 27 Vehicle Damage Rating 1 | B L - 1 | 27 Vehicle Damage Rating 2 | | Vehicle Inventoried | ☐ Yes ☒ No |

| Towed By | | Towed To | |

Law Enforcement and TxDOT Use
Form CR-3 (Rev. 1/1/2018)

ID 21-06-3337    TxDOT Crash ID 18334526.1/2021284002

## DISPOSITION OF INJURED/KILLED

| Unit Num. | Prsn. Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HR:MM) |
|---|---|---|---|---|---|
| 2 | 2 | RESOLUTE HOSPITAL NEW BRAUNFELS | NBEMS | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

## CHARGES

| Unit Num. | Prsn. Num. | Charge | Citation/Reference Num. |
|---|---|---|---|
| 1 | 1 | FAILURE TO YIELD RIGHT OF WAY/UNSAFE LANE CHANGE | 21-06-3337 |
| | | | |
| | | | |

## DAMAGE

| Damaged Property Other Than Vehicles | Owner's Name | Owner's Address |
|---|---|---|
| | | |

## CMV

| Unit Num. | ☐ 10,001+ LBS. | ☐ TRANSPORTING HAZARDOUS MATERIAL | ☐ 9+ CAPACITY | CMV Disabling Damage? ☐ Yes ☐ No | 28 Veh. Oper. | 29 Carrier ID Type | Carrier ID Num. | |
|---|---|---|---|---|---|---|---|---|
| Carrier's Corp. Name | | | Carrier's Primary Addr. | | | | | 30 Veh. Type |
| 31 Bus Type | ☐ RGVW ☐ GVWR | | HazMat Released ☐ Yes ☐ No | 32 HazMat Class Num. | HazMat ID Num.| | 32 HazMat Class Num. | HazMat ID Num.| 33 Cargo Body Type |
| Unit Num. | ☐ RGVW ☐ GVWR | | 34 Trlr. Type | CMV Disabling Damage? ☐ Yes ☐ No | Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type | CMV Disabling Damage? ☐ Yes ☐ No |
| Sequence Of Events | 35 Seq. 1 | 35 Seq. 2 | 35 Seq. 3 | 35 Seq. 4 | Intermodal Shipping Container Permit ☐ Yes ☐ No | Actual Gross Weight | Total Num. Axles |

## FACTORS & CONDITIONS

| 36 Contributing Factors (Investigator's Opinion) | | | | 37 Vehicle Defects (Investigator's Opinion) | | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit # | Contributing | | May Have Contrib. | Contributing | | May Have Contrib. | 38 Weather Cond. | 39 Light Cond. | 40 Entering Roads | 41 Roadway Type | 42 Roadway Alignment | 43 Surface Condition | 44 Traffic Control |
| 1 | 4 | 60 | 20 | | | | 1 | 1 | 97 | 3 | 1 | 1 | 17 |

## NARRATIVE AND DIAGRAM

**Investigator's Narrative Opinion of What Happened**
(Attach Additional Sheets if Necessary)

UNIT 1 ATTEMPTED TO PASS UNIT 2 STRIKING UNIT 2 CAUSING HEAVY
DAMAGE TO UNIT 1 AND MINOR DAMAGE UNIT 2. BOTH UNITS CAME TO A
STOP IN #3 LANE BLOCKING TRAFFIC. UNIT 1 TOWED BY JJ TOWING
DRIVER UNIT 1 CITED. PASSENGER UNIT 2 TRANSPORTED TO RESOLUTE BY
NBEMS. UNIT 2 DRIVEN FROM SCENE.

Field Diagram - Not to Scale

Not To Scale

IH35

Copy from Custodial File

## INVESTIGATOR

| Time Notified (24HR:MM) | 2 0 9 | How Notified | DISPATCHED | Time Arrived (24HR:MM) 2 0 2 8 | Report Date (MM/DD/YYYY) 0 6 / 2 3 / 2 0 2 1 | ID Num. 444 |
|---|---|---|---|---|---|---|
| Invest. Comp. | ☒ Yes ☐ No | Investigator Name (Printed) Jones, Joshua R | | | | |
| ORI Num. | T X 0 4 6 0 0 0 0 | *Agency COMAL COUNTY SHERIFF'S OFFICE | | | Service/ Region/DA 1 0 | |

**EXHIBIT 2**

RF–PFHT   6/22/2022 5:27:25 AM   PAGE   3/007   Fax Server

**State Farm Mutual Automobile Insurance Company**

*PO Box 853919*
*Richardson, TX 75085-3919*

| | 37406-2-P | MUTL  VOL |
|---|---|---|

**DECLARATIONS PAGE**

PAGE 1 OF 2

NAMED INSURED
AT1         005486 0058      53-2120-2 P    A
IQBAL, PASHA M & SARA P &
IQBAL, MUSTAFA M &
ATHER, ASMA P
12904 GORDONS RUN
SAN ANTONIO TX  78253-6402

| POLICY NUMBER | 262 6683-C05-53O |
|---|---|
| POLICY PERIOD | APR 25 2020 to SEP 05 2020 |
| | 12:01 A.M. Standard Time |

STATE FARM PAYMENT PLAN NUMBER
1211316825

AGENT

ART MANZANO
1255 SW LOOP 410 STE 135
SAN ANTONIO, TX 78227-1667

PHONE: (210)670-0000

DO NOT PAY PREMIUMS SHOWN ON THIS PAGE.
IF AN AMOUNT IS DUE, THEN A SEPARATE STATEMENT IS ENCLOSE D.

**YOUR CAR**

| VEHICLE | YEAR | MAKE | MODEL | BODY STYLE | VEHICLE ID NUMBER | CLASS |
|---|---|---|---|---|---|---|
| 2 | 2016 | NISSAN | SENTRA | 4DR | 3N1AB7AP6GY323989 | 103002F000 |
| 3 | 2016 | DODGE | CARAVAN | VAN | 2C4RDGBG8GR227323 | 603F02F000 |
| 4 | 2010 | NISSAN | ALTIMA | 2DR | 1N4AL2EP7AC117142 | 603002F000 |

| SYMBOL | COVERAGE & LIMITS | 2016 NISSAN | 2016 DODGE | 2010 NISSAN |
|---|---|---|---|---|
| A | Liability Coverage | | | |
| | Bodily Injury Limits | $102.97 | $91.96 | $97.12 |
| | Each Person  Each Accident | | | |
| | $50,000        $100,000 | | | |
| | Property Damage Limit | $120.94 | $107.81 | $123.90 |
| | Each Accident | | | |
| | $50,000 | | | |
| P | Personal Injury Protection Coverage | $21.87 | $18.87 | $20.51 |
| | Each Person | | | |
| | $2,500 | | | |
| D | Comprehensive Coverage - $250 Deductible | $18.13 | $63.89 | |
| G | Collision Coverage – $250 Deductible | $174.55 | $126.98 | |
| | Emergency Road Service Coverage | | | |
| R1 | Car Rental and Travel Expenses Coverage | $20.19 | $20.19 | |
| | Limits Car Rental Expense | | | |
| | Each Day,    Each Loss | | | |
| | $1,200 | | | |
| U | Uninsured/Underinsured Motorists Coverage | | | |
| | Bodily Injury Limits | $80.17 | $60.61 | $0.97 |
| | Each Person,  Each Accident | | | |
| | $50,000         $100,000 | | | |
| | Property Damage Limit | $21.00 | $21.00 | $21.00 |
| | Each Accident | | | |
| | $50,000 | | | |

| | Total Premium Per Auto | $559.82 | $489.88 | $283.51 |
|---|---|---|---|---|

| Total premium for APR 25 2020 to SEP 05 2020 | $1,333.21 |
|---|---|

CONTINUED

See Reverse Side

03872/05277

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Mutuals - Membership and Voting Notice.** The Insured is notified that by virtue of this policy, he is a member of the State Farm Mutual Automobile Insurance Company of Bloomington, Illinois, and is entitled to vote either in person or by proxy at any and all meetings of said company. The annual meetings are held in its home office, at Bloomington, Illinois, on the second Monday of June, in each year, at 10:00 o'clock A.M.

2. **Mutuals - Participation Clause Without Contingent Liability.** No Contingent Liability: This policy is nonassessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be executed and attested.

*Lynne M. Yaukell*
SECRETARY

*Michael F. Tipsord*
PRESIDENT

010

RF-PFHT                    6/22/2022 5:27:25 AM   PAGE   5/007   Fax Server

**State Farm Mutual Automobile Insurance Company**

PO Box 853919
Richardson, TX 75085-3919

37406-2-P          MUTL  VOL

| **DECLARATIONS PAGE** |
|---|
| **PAGE 2 OF 2** |

53-2120-2 P      A

NAMED INSURED  005486 0058
IQBAL, PASHA M & SARA P &
IQBAL, MUSTAFA M &
ATHER, ASMA P
12904 GORDONS RVN
SAN ANTONIO TX  78253-6402

| POLICY NUMBER | 262 6683-C05-53O |
|---|---|
| POLICY PERIOD | APR 25 2020 to SEP 05 2020 |
| 12:01 A.M. Standard Time | |

STATE FARM PAYMENT PLAN NUMBER
1211316825

---

**IMPORTANT MESSAGES**

**INSURANCE WEBSITE NOTICE**
To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/Office of Public Insurance Counsel website:

**www.helpinsure.com.**

**AVISO DEL SITIO WEB DE SEGUROS**
Para obtener formas para la comparación de precios y póliza y para obtener otra información sobre el seguro de propiedad residencial y de seguro de automóvil personal, visite el sitio web del Departamento de Seguros de Texas/Oficina del Asesor Público de Seguros:

**www.helpinsure.com.**

The Auto(s) or Trailer(s) described in this policy is principally garaged at the address shown unless otherwise stated.

Replaced policy number 2626683-53N.

**Your total renewal premium for MAR 05 2020 to SEP 05 2020 is $1,849.10.**
Auto 2 $776.44, Auto 3 $679.44, Auto 4 $393.22.

State Farm works hard to offer you the best combination of price, service, and protection.   The amount you pay for automobile insurance is determined by many factors such as the coverages you have, where you live, the kind of car you drive, how your car is used, who drives the car, and information from consumer reports including credit history.

You have the right to request, no more than once during a 12-month period, that your policy be re-rated using a current credit-based insurance score. Re-rating could result in a lower rate, no change in rate, or a higher rate.

---

**EXCEPTIONS, POLICY BOOKLET & ENDORSEMENTS (See policy booklet & individual endorsements for coverage details)**

YOUR POLICY CONSISTS OF THIS DECLARATIONS PAGE, THE POLICY BOOKLET -
FORM 9843A, AND ANY ENDORSEMENTS THAT APPLY, INCLUDING THOSE ISSUED TO YOU
WITH ANY SUBSEQUENT RENEWAL NOTICE.
CREDITOR- CAR 2 CREDIT HUMAN FEDERAL CREDIT UNION, PO BOX 1356, SAN ANTONIO
TX 78295-1356.
CREDITOR- CAR 3 SECURITY SERVICE FEDERAL CREDIT UNION, PO BOX 792510, SAN
ANTONIO TX 78279-2510.
CAR 3
ORIGINAL COST OF CUSTOMIZATION NONE OR UP TO $1000.

---

| Agent: | ART MANZANO |
|---|---|
| Telephone: | (210)670-0000 |
| Prepared | APR 30 2020      2120-B58 |

03873/05277

This policy is issued by State Farm Mutual Automobile Insurance Company.

## MUTUAL CONDITIONS

1. **Mutuals - Membership and Voting Notice.** The insured is notified that by virtue of this policy, he is a member of the State Farm Mutual Automobile Insurance Company of Bloomington, Illinois, and is entitled to vote either in person or by proxy at any and all meetings of said company. The annual meetings are held in its home office, at Bloomington, Illinois, on the second Monday of June, in each year, at 10:00 o'clock A.M.

2. **Mutuals - Participation Clause Without Contingent Liability.** No Contingent Liability: This policy is nonassessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

In Witness Whereof, the State Farm Mutual Automobile Insurance Company has caused this policy to be executed and attested.

*Lynne M. Yaxell*
SECRETARY

*Michael T. Tipsord*
PRESIDENT

RF—PFHT                  6/22/2022 5:27:25 AM   PAGE   7/007   Fax Server

**State Farm**

## Certified Policy Record

I, the undersigned, do hereby confirm that I am custodian of the records pertaining to the issuance of policies by State Farm Mutual Automobile Insurance Company.

I certify that the attached documents represent a true and accurate record of the terms and conditions of Policy Number 262 6683-C05-53O including any endorsements, if applicable, for the policy term(s) 03/05/2021 to 07/28/2021 and insuring IQBAL, PASHA M & SARA P & IQBAL, MUSTAFA M & ATHER, ASMA P based on available records.

The following endorsements are included:
6128DV effective 09/05/2020

It is State Farm's business practice to print a new Declarations Page only when a policy issuance transaction such as a change of coverage occurs. Therefore, the included Declarations Page which was in effect at the time of loss will indicate the policy period of the last policy issuance transaction.

The policy was in effect on the loss date of 06/18/2021.

Jeffrey Kressner
Underwriter
Date: 5/9/2022

1011493                                                   2000 157622 200 02-09-2022

# EXHIBIT 3

John N. Tyler*
Dennis C. Peery*
James H. Shaffer*
R. Craig Bettis



Robert C. Cowan, Jr.
Of Counsel
Jeffrey W. Jones*
Of Counsel

August 11, 2021

VIA FACSIMILE (855) 820-6318

STATE FARM
P.O. Box106171
Atlanta, GA 30348

RE:    Our Client/Insured   : Pasha Iqbal
       Our File No.         : 200963 – RCB
       **Claim No.**        : **53-21D1-58H**
       Date of Loss         : June 18, 2021

Dear Sir or Madam:

Please be advised that I have been retained by Pasha Iqbal to pursue a claim for all damages arising from a motor vehicle collision which occurred on June 18, 2021. Enclosed is a copy of the Texas Peace Officer's Crash Report for your review. Please direct all future correspondence to me.

My client received injuries as a result of this collision.  <u>Please send me an application for PIP benefits.  If it is your contention that PIP/UM/UIM coverages were rejected by the named insured, please send me a copy of the signed rejection.</u>

Should you have any questions or comments, please contact me. Thank you for your prompt attention to this matter.

Sincerely yours,

*R. Craig Bettis / ER*

R. CRAIG BETTIS

RCB/er
Enclosure: TX. Peace Officer's Crash Report (3 pgs.).



John N. Tyler*
Dennis C. Peery*
James H. Shaffer*
R. Craig Bettis

Robert C. Cowan, Jr.
Of Counsel
Jeffrey W. Jones*
Of Counsel

August 11, 2021

VIA FACSIMILE (855) 820-6318

STATE FARM
P.O. Box 106171
Atlanta, GA 30348

RE:     Our Client/Insured   : Sara Iqbal
        Our File No.         : 200963 – RCB
        **Claim No.**        : **53-21D1-58H**
        Date of Loss         : June 18, 2021

Dear Sir or Madam:

Please be advised that I have been retained by Sara Iqbal to pursue a claim for all damages arising from a motor vehicle collision which occurred on June 18, 2021. Enclosed is a copy of the Texas Peace Officer's Crash Report for your review. Please direct all future correspondence to me.

My client received injuries as a result of this collision. <u>Please send me an application for PIP benefits. If it is your contention that PIP/UM/UIM coverages were rejected by the named insured, please send me a copy of the signed rejection.</u>

Should you have any questions or comments, please contact me. Thank you for your prompt attention to this matter.

Sincerely yours,

*R. Craig Bettis / ER*

R. CRAIG BETTIS

RCB/er
Enclosure: TX. Peace Officer's Crash Report (3 pgs.).

5822 West IH 10 ● San Antonio, Texas 78201-2851 ● Phone (210) 340-0900 ● Fax (210) 736-9197
www.tylerpeery.com

*Board Certified ● Personal Injury Trial Law, Texas Board of Legal Specialization

# EXHIBIT 4

John N. Tyler*
Dennis C. Peery*
James H. Shaffer*
R. Craig Bettis



Robert C. Cowan, Jr.
Of Counsel
Jeffrey W. Jones*
Of Counsel

February 9, 2022

VIA EMAIL: automedicalclaims@statefarm.com

UIM Claims Team
State Farm Claims
P.O. Box 106170
Atlanta, GA 30348-6170

|  | RE: | Our Client/Insured | : Pasha and Sara Iqbal |
|---|---|---|---|
|  |  | Our File No. | : 200963 (Pasha Iqbal) |
|  |  |  | : 200964 (Sara Iqbal) |
|  |  | Claim Number | : 53-21D1-58H |
|  |  | Date of Accident | : June 18, 2021 |

Dear Madam or Sir:

As you know, this law firm represents Mr. Pasha Iqbal and Ms. Sara Iqbal on ttheir personal injury claims which arose from an automobile collision on June 18, 2021. GEICO insures Emily Santiago, the driver who caused this collision. I want to provide GEICO with an offer to settle for an amount equal to or within the policy limit in return for a full release of claims against Ms. Santiago.

### _PERMISSION REQUESTED TO SETTLE WITH THE 3RD PARTY CARRIER_

In order to protect my clients' rights in a potential Underinsured Motorists claim, permission is requested from State Farm Mutual Automobile Insurance Company to make this offer or to settle with the third-party tortfeasor for an amount within their policy limit in return for a full release.

Please send your permission in writing to this office within 15 days. If I do not hear from you within 15 days, I will assume you have provided permission to settle for the above stated amount.

The purpose of this letter is to comply with any such requirement under the Iqbal's policy with State Farm Mutual Automobile Insurance Company. It is also requested because Mr. Iqbal and Ms. Iqbal does not want to lose an opportunity to settle at a time when expenses are low. Delay in receiving permission may result in Mr. and Ms. Iqbal incurring unnecessary case expenses.

*UIM Claims Team*
*February 9, 2022*
*Page 2 of 2*
*Re: Insureds: Pasha Iqbal and Sara Iqbal, Claim No.: 53-21D1-58H*

The limit of Ms. Santiago's policy is unknown at this time. Please forward your written permission to this office at the address or fax listed on the letterhead. The adjuster's contact information is as follows:

|  |  |  |
|---|---|---|
| **Insurance Company** | : | **GEICO** |
| **Adjuster** | : | **Nakeisha Stribling** |
| **Claim Number** | : | **0109446710101054** |
| **Telephone Number** | : | **(832) 772-0575** |

If you have any questions or need any additional information, please contact me in writing. Unfortunately, I have no way of independently verifying the amount of the third-party's liability limits. However, the amount of that limit is not relevant to the issue of granting permission to settle the third-party claim.

### *UNDERINSURED MOTORIST CLAIM*

As stated above, I do not have any independent way of verifying the amount of the third-party's liability limits. As such, I am not making an underinsured motorist claim at this time. I am simply requesting permission to settle with the third party carrier and that said permission be confirmed in writing.

Please send written acknowledgement of my representation and your receipt of this letter. Thank you for your time and attention.

Sincerely yours,

R. CRAIG BETTIS

RCB:ms

# EXHIBIT 5

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 State Farm

February 22, 2022

The Law Offices Of Tyler & Peery
5822 W Ih 10
San Antonio TX  78201-2851

State Farm Claims
PO Box 106171
Atlanta GA 30348-6171

RE:   Claim Number:     53-21D1-58H
      Date of Loss:      06/18/2021
      Our Insured:       Pasha M Iqbal

To Whom It May Concern:

Please accept this letter as the written consent of State Farm Mutual Automobile Insurance
Company to settle your client's underlying liability claim.

If you wish to present an Underinsured Motorist Bodily Injury claim on behalf of your client,
please provide us with information to support this claim.  Additionally, please provide
us with proof of the underlying carrier's liability limits.

If you have any questions, please contact us.

Sincerely,

Todd Dauper
Claim Specialist
972-907-7562
Fax:    (855) 820-6318

State Farm Mutual Automobile Insurance Company

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 StateFarm

December 29, 2022

The Law Offices Of Tyler & Peery
5822 W Ih 10
San Antonio TX  78201-2851

State Farm Claims
PO Box 106171
Atlanta GA 30348-6171

RE:     Claim Number:    53-21D1-58H
        Date of Loss:      06/18/2021
        Our Insured:       Sara Parveen Iqbal

To Whom It May Concern:

Please accept this letter as the written consent of State Farm Mutual Automobile Insurance
Company to settle your client's underlying liability claim.

If you wish to present an Underinsured Motorist Bodily Injury claim on behalf of your client,
please provide us with information to support this claim.  Additionally, please provide
us with proof of the underlying carrier's liability limits.

If you have any questions, please contact us.

Sincerely,


Todd Dauper
Claim Specialist
(844) 292-8615 Ext. 335
Fax:    (855) 820-6318

State Farm Mutual Automobile Insurance Company

# EXHIBIT 6

John N. Tyler*
Dennis C. Peery*
James H. Shaffer*
R. Craig Bettis



Robert C. Cowan, Jr.
Of Counsel

---

December 22, 2022

Mr. Todd Dauper
STATE FARM MUTUAL AUTO. INS. CO.
P. O. Box 106171
Atlanta, GA 30348

VIA EMAIL automedicalclaims@statefarm.com
VIA CM,RRR 7020 0090 0000 6431 5757

RE:    **DEMAND FOR TIMELY PAYMENT OF UM/UIM BENEFITS**
      Our Client/Insured   : Pasha Iqbal
      Our File No.        : 200963 – RCB
      **Claim Number**   **: 53–21D1–58H**
      Date of Accident   : June 18, 2021

Dear Mr. Dauper:

As you know, this law firm represents Mr. Pasha Iqbal for his personal injury claim arising from the automobile collision on June 18, 2021. GEICO insures Emily Santiago, the driver who caused this collision. It is my understanding you are the adjuster assigned by **State Farm Mutual Insurance Company (hereinafter State Farm)** to handle the UM/UIM (underinsured motorist) claim. If you are not, please immediately forward this letter to the UM/UIM adjuster assigned to this case.

On February 22, 2022, **State Farm** gave permission to settle Mr. Pasha Iqbal's 3rd party claim with GEICO for an amount within their bodily injury limits. On October 7, 2022, GEICO offered an amount within their policy limits. *Please see the attached letter from GEICO.*

## LIABILITY

According to the enclosed Texas Peace Officer's Crash report, the investigating officer and the witness at the scene placed fault for the crash on Ms. Emily Santiago. Ms. Santiago's inattention, failure to control speed, faulty evasive action and failure to drive in a single lane caused the crash.

| CHARGES | Unit Num. | Prsn. Num. | Charge | Citation/Reference Num |
|---------|-----------|------------|--------|------------------------|
| | 1 | 1 | FAILURE TO YIELD RIGHT OF WAY/UNSAFE LANE CHANGE | 21-06-3337 |
| | | | | |

*(Texas Peace Officer's Crash Report – Page 2 of 2)*

| FACTORS & CONDITIONS | 36 Contributing Factors (Investigator's Opinion) | | | | |
|----------------------|-----------|------|-----|-----|------------------|
| | Unit # | Contributing | | | May Have Contrib. |
| | 1 | 4 | 60 | 20 | |
| | | | | | |

*(Texas Peace Officer's Crash Report – Page 2 of 2)*

---

5822 West IH 10 □ San Antonio, Texas 78201-2851 □ Phone (210) 340-0900 □ Fax (210) 736-9197
www.tylerpeery.com
*Board Certified □ Personal Injury Trial Law, Texas Board of Legal Specialization

Page 2 of 10
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: Pasha Iqbal
Date of Accident: June 18, 2021

| Investigator's Narrative Opinion of What Happened |
| --- |
| (Attach Additional Sheets if Necessary) |

UNIT 1 ATTEMPTED TO PASS UNIT 2 STRIKING UNIT 2 CAUSING HEAVY DAMAGE TO UNIT 1 AND MINOR DAMAGE UNIT 2. BOTH UNITS CAME TO A STOP IN #3 LANE BLOCKING TRAFFIC. UNIT 1 TOWED BY JJ TOWING DRIVER UNIT 1 CITED. PASSENGER UNIT 2 TRANSPORTED TO RESOLUTE BY NBEMS. UNIT 2 DRIVEN FROM SCENE.

*(Texas Peace Officer's Crash Report – Page 2 of 2)*



*(Iqbal's Vehicle)*



*(Texas Peace Officer's Crash Report – Page 2 o*

## THE HARMS & LOSSES OF THE COLLISION

Enclosed is a CD containing medical records, billing records, video of the collision as well as a summary of bills. As of today, Mr. Pasha Iqbal incurred medical expenses to **$20,234.00.**

Mr. Iqbal was seen at Resolute Health Hospital for injuries to his neck and back. Mr. Iqbal had follow up medical care at Pro-Care Medical Center and unfortunately due to extent of his neck and left shoulder symptoms MRIs were ordered.

His cervical MRI revealed various disc protrusion with herniation at C3-C6 measuring at 3mm and C6-7 measuring 4mm.

Page 3 of 10
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

IMPRESSION:

1. Alignment of the spine is unremarkable. There is no acute fracture, segmental instability or cord contusion.

2. At C3-C4, there is a posterior protrusion-subligamentous disc herniation, right posterolateral-foraminal in location, measuring 3 mm, which impinges upon the anterior thecal sac with severe narrowing of the right neural foramina and impingement of the right exiting C4 nerve root. There is mild spinal stenosis.

3. At C3-C4, there is a posterior protrusion-subligamentous disc herniation, right posterolateral-foraminal in location, measuring 3 mm, which impinges upon the anterior thecal sac with severe narrowing of the right neural foramina and impingement of the right exiting C4 nerve root. There is mild spinal stenosis.

4. At C5-C6, there is a posterior protrusion-subligamentous disc herniation, central and left central in location, measuring 3, which impinges upon the anterior thecal sac, reaching and impinging/deforming the ventral cord. There is severe narrowing of the bilateral neural foramina with impingement of the bilateral exiting C6 nerve roots. There is moderate spinal stenosis.

5. At C6-C7, there is a posterior protrusion-subligamentous disc herniation, central in location, measuring 4 mm, which impinges upon the anterior thecal sac, reaching up to the level of the cord. There is moderate narrowing of the bilateral neural foramina with impingement of the bilateral exiting C7 nerve roots. There is mild spinal stenosis.

*(Pro Care Medical Center, Medical Affidavit Bate No. 002)*

His left shoulder MRI revealed rotator cuff.

IMPRESSION:

1. Partial thickness, undersurface tear of the anterior fibers of the supraspinatus tendon, measuring 14 mm in AP length, with thinning / loss of volume by 70%. There are interstitial tears, moderate to severe, of the remainder of the supraspinatus, with mild background tendinosis.

2. Infraspinatus interstitial tears, mild.

3. Glenohumeral joint effusion, mild.

4. Subacromial / subdeltoid bursitis.

5. Tendinosis of long head of biceps tendon in its intraarticular course.

6. Biceps tenosynovitis.

7. Mild hypertrophic changes at acromioclavicular joint, causing indentation of supraspinatus fat. There is a Type II acromion. The acromiohumeral distance is maintained.

8. Subcortical cystic changes with reactive marrow edema at greater tuberosity and posterosuperior aspect of head of humerus.

In comparison to MRI of the left shoulder on 02/07/2018, there has been interval progression / worsening with respect to the supraspinatus tendon tear, development of interstitial tears within the infraspinatus tendon and development of biceps tenosynovitis.

*(Pro Care Medical Center, Medical Affidavit Bate No. 003-004)*

Page 4 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H** / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

His hip MRI revealed a tear.

IMPRESSION:

1. Right anterior superior acetabular labral tear.

*(Pro Care Medical Center, Medical Affidavit Bate No. 004)*

As a result of Mr. Iqbal's symptomatology and MRI findings, he sought medical attention from Dr. Bruggeman for an orthopedic evaluation. **Dr. Bruggeman has recommended cervical spine surgery with an estimated cost of $302,477.15.**

TEXAS
**SPINECARE**
CENTER

**ADAM J BRUGGEMAN, MD**
Fellowship Trained Spine Surgeon

P: 210-802-4662
F: 210-802-4722
www.texasspinecare.com

3619 Paesanos Parkway
Suite 302
San Antonio, TX 78231

May 7, 2022

Patient: Pasha Iqbal
DOB:  10/21/57
DOI:  6/18/21

To Whom It May Concern

Mr. Iqbal was involved in a motor vehicle accident on the above date and imaging revealed the following findings:

1.  Disc Herniation C4-5, C5-6, C6-7

Based on my experience and training as an orthopedic and spine surgeon, it is my opinion that within reasonable medical certainty, the need for the following surgeries are the direct result of the accident based on the information available to me at this time.

1.  Anterior Cervical Discectomy and Fusion C4-5, C5-6, C6-7

The anticipated costs of future medical care includes:

1.  Anterior Cervical Discectomy and Fusion C4-5, C5-6, C6-7
    1.  Surgeon Fees - $48,318.10
    2.  Assistant Fees - $24,159.05
    3.  Rehab/DME/Xrays/Medications - $25,000
    4.  Anesthesia Fees - $5,000
    5.  Hospital Fees - $200,000

Sincerely yours,

Adam Bruggeman, MD

*(Dr. Bruggeman, Medical Records Bate No.12000)*

Mr. Pasha Iqbal was referred to orthopedic surgeon, Dr. Manish Patel. **Dr. Patel stated that Mr. Iqbal will require left shoulder surgery at a cost of $71,310.00.**

Page 5 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H / Our Client: Pasha Iqbal**
Date of Accident: June 18, 2021



# PRO·CARE
## MEDICAL CENTERS

### Surgical Estimate - Shoulder

Patient:   Pasha Iqbal
DOB:      10/21/1957
Date:      10/13/2021

Based on an initial evaluation and appropriate diagnostic studies, Manish Patel, MD has determined that surgical repair to the left shoulder is medically necessary.

The expected CPT codes are as follows

29821 – Complete Synovectomy                    29826 – Subacromial Decompression
29823 – Extensive Debridement                    29827 – Rotator Cuff Repair
29824 – Distal Clavicle Resection,                 29828 – Biceps Tenodesis, Arthroscopic

Estimated surgery center fees, including anesthesia:

$40,245.00

Estimated surgical fees:

$31,065.00

Total surgical estimate:

$71,310.00

*This estimate does NOT include hardware, any follow-up medical visits and post-operative rehabilitation.

Please let me know if you have any questions.

Sincerely,

Courtney Brock
Case Manager

*(Pro Care Medical Center, Medical Affidavit Bate No. 016)*

    Mr. Pasha Iqbal was referred to orthopedic surgeon, Dr. Frank Schroeder. Dr. Schroeder impression of the hip displays a tear.

# Creedmoor Orthopedics
## Frank Schroeder, D.O
### Board Certified Orthopedic Surgeon

Pasha M. Iqbal
Page 3

**IMPRESSION**
Tear of the acetabular labrum, right hip.

**RECOMMENDATION**
1. Rx Ibuprofen 650 mg one p.o. t.i.d. with food. The patient is instructed to take this medication consistently for one week.
2. I would like to see the patient back in three to four weeks for re-evaluation.

*(Creedmoor Orthopedics, Medical Affidavit Bate No. 013)*

Page 6 of 10
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

### Mr. Iqbal's future medical care damages are $373,787.15 in addition to the medical expenses incurred to date of $20,234.00.

### EMILY SANTIAGO WAS UNINSURED AT THE TIME OF THE COLLISION

At the time of the collision the vehicle operated by Emily Santiago was an underinsured motorist. Ms. Santiago only carried a $30,000 per policy limits. Please see a copy of Geico's letter dated December 15, 2022.

### DEMAND FOR UM/UIM POLICY LIMITS

I have now provided **State Farm** with copies of all items and documents necessary for it to accept or reject Mr. Pasha Iqbal's uninsured motorist (UM/UIM) claim. You have not asked me for any items not already produced.

This letter shall serve as a demand for **State Farm** to pay Pasha Iqbal the **State Farm uninsured motorist policy** (UM/UIM policy) limits within the time allowed by law.

### NOTICE OF EXTRA CONTRACTUAL DAMAGES IN THE EVENT USAA FAILS TO TIMELY PAY THE FULL AMOUNT OF THE UM/UIM BENEFITS

As of the date of this letter, **State Farm** has been provided with copies of all items and documents necessary for it to accept or reject Pasha Iqbal's uninsured motorist (UM) claim. See below index page.

There is no conflicting medical or lay evidence that the motor vehicle collision was caused by anyone other than Emily Santiago. There is no evidence that the medical injuries were caused by anything else but the subject motor vehicle collision. There is no conflicting medical evidence that Mr. Pasha Iqbal will not require the future medical care described above and in the medical records provided. Thus, the liability and damages are "**reasonably clear**" as there is no expert evidence supporting any other conclusion.

Pursuant to Texas common law, the Supreme Court has made it clear that a first party insurer (i.e. **State Farm**) can be liable for common law bad faith and insurance code violations when it fails to pay a claim that has become "**reasonably clear**". *Universal Life Ins. V. Giles*, 950 SW2d 48, 56(Tex.1997), *State Farm Fire & Cas. Co. v. Simmons*, 963 SW2d 42, 44 (Tex.1998).

Since **State Farm** is Pasha Iqbal's insurer, **State Farm** has a legal and fiduciary duty from the day it received notice of the claim to pay the claim when and if it is becomes "**reasonably clear**". That is the law pure and simple. And as stated above, it is "**reasonably clear**" that **State Farm** owes Pasha Iqbal the full amount of the UM/UIM policy benefits, and owes it now because Pasha Iqbal's damages far exceed the sum of available limits.

Page 7 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H** / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

If **State Farm** refuses to pay the UM policy benefits, due to the cost of future medical care, due to the lengthy post-treatment recovery time, and due to his limited finances, Mr. Iqbal will have to delay having future medical care that he needs until after he files suit seeking UM benefits from **State Farm** and takes the suit to a jury verdict. This process may take approximately 1-2 years, and therefore **State Farm** will be forced to live with additional pain and suffering while waiting to have future medical treatment(s), and this additional pain and suffering will be caused by **USAA's** own conduct of <u>refusing to timely pay</u> the UM benefits even though the facts are "**reasonably clear**" and undisputed. Because **State Farm** owes a fiduciary duty to Pasha Iqbal, if it refuses to tender its UM policy limits it will be a breach of the duty of good faith and fair dealing, and will be a violation of numerous unfair settlement practices, including the following, to wit:

(1) Not attempting in good faith to bring about a prompt, fair and equitable settlement of a claim once the insurer's liability becomes **reasonably clear.** <u>Tex. Ins. Code §541.060 (a) (2) (A)</u>

(2) attempting to pressure the claimant to settle a claim under one portion of the coverage by refusing to bring about a prompt, fair and equitable settlement under a second portion of the coverage, once the insurer's liability on the second portion becomes reasonably clear. <u>Tex. Ins. Code §541.060 (a) (2) (B)</u>

(3) Not promptly giving a policyholder a reasonable explanation, based on the policy as it relates to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim. <u>Tex. Ins. Code §541.060 (a) (3)</u>

(4) Not completing either of the following within a **reasonable time**:

    a.  Affirming or denying coverage of a claim to a policyholder; and
    b.  submitting a reservation of rights to a policyholder .<u>Tex. Ins. Code §541.060 (a) (4) (A-B)</u>

(5) refusing, failing to make, or unreasonably delaying an offer of settlement under applicable first party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as specifically provided in the policy. <u>Tex. Ins. Code §541.060 (a) (5)</u>

(6) refusing to pay a claim without conducting a reasonable investigation. <u>Tex. Ins. Code §541.060 (a) (7)</u>

(7) for Texas personal auto policies, delaying or refusing settlement of a claim solely because there is other insurance of a different type available to satisfy all or part of the loss. Tex. Ins. Code §541.060 (a) (8)

Page 8 of 10
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

If **State Farm** fails to pay the UM policy limits within the time specified in this letter, this is notice to **State Farm** that it will be sued for violations of some or all of the above provisions. Please be aware that under the common law, in an action for bad faith, the insured can recover actual damages for economic or personal injuries. *Pena v. State Farm Lloyds*, 980 S. W. 2D9 49, 958 (Tex. App.--- Corpus Christi, 1998, no pet). An insured can also recover mental anguish damages. *Giles*, 950 S. W. 2D at 54. Under the Texas Insurance Code, an insured can recover his or her actual damages, including damages for economic loss, policy proceeds, and damages for personal injury. Additionally, an insured can recover damages for mental anguish when there is a finding that the defendant acted knowingly. *State Farm Life Ins. v. Beaston*, 907 S. W. 2D 430, 436 (Tex. 1995). Under both the common law and the Texas Insurance Code, the insured can recover exemplary damages and additional damages. Under the Texas Insurance Code the damages that are allowed may be up to three times the amount of the actual damages. Tex. Ins. Code §541.152 (B).

Should **State Farm** fail to pay the policy limits within the time specified within this letter, Mr. Pasha Iqbal will seek the following economic losses from **State Farm** in addition to the policy benefits:

(1) the difference in the amount of attorney's fees at the present time and attorney's fees in the event of trial;

(2) Additional case and litigation expenses which are expected to be approximately $15,000.00-$20,000.00. Your failure to pay the claim will likely result in unnecessary deposition fees and expert fees from medical providers that otherwise would not have to be incurred;

(3) Personal injury damages to the insured resulting from the inability to obtain additional medical care to the extent they caused additional injury;

(4) mental anguish and pain and suffering damages incurred because of the delay in receiving treatment that otherwise would have been obtained but for the failure of **State Farm** to pay the UM policy limits.

All of the elements of damages itemized above would be a direct result of **State Farm's** refusal or delay in timely paying the full amount of the UM claim. Additionally, since there is no reasonable basis to deny the UM claim, we would seek exemplary damages or treble damages as allowed by statute. In addition to that, we would seek our reasonable attorney's fees for the additional work required in addressing these violations.

This letter shall serve as a formal demand for payment the payment in full of the **State Farm** UM policy limits within the time allowed by law.

Page 9 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H** / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

Please contact me after you have had a chance to review the medical. I look forward to working with you to resolve this claim in an amicable manner. Thank you for your attention in this matter.

Sincerely yours,

*R. Craig Bettis / CR*

R. CRAIG BETTIS

RCB/er
Enclosures As State on Pag 10 of 10

Page 10 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H** / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

## *ENCLOSURES ON CD DECEMBER 15, 2022*

1. CD;
2. Texas Peace Officer's Crash Report
3. Video
4. Summary of Medical Bills
5. Resolution Health Hospital, Medical Affidavit (Bates No. 001-040)
6. Resolution Health Hospital, Billing Affidavit (Bates No. 01)
7. M&S Radiology, Billing Affidavit (Bates No. 01)
8. Pro Care Medical Center, Medical Affidavit (Bates No. 001-083)
9. Pro Care Medical Center's, Surgical Report (Bates No. 13000)
10. Pro Care Medical Center, Billing Affidavit (Bates No. 01-08)
11. Creedmoor Othopedics, Medical Affidavit (Bates No. 001-020)
12. Creedmoor Othopedics, Billing Affidavit (Bates No. 01-02)
13. Dr. Adam Bruggeman, Medical Record (Bates No. 11000-11012)
14. Dr. Adam Bruggeman's, Surgical Report (Bates No. 10000)



# EXHIBIT 7

John N. Tyler*
Dennis C. Peery*
James H. Shaffer*
R. Craig Bettis



Robert C. Cowan, Jr.
Of Counsel

---

January 11, 2023

Mr. Todd Dauper                               VIA EMAIL statefarmclaims@statefarm.com
STATE FARM MUTUAL AUTO. INS. CO.              VIA CM,RRR 7020 0090 0000 6431 5832
P. O. Box 106171
Atlanta, GA 30348

RE:    **DEMAND FOR TIMELY PAYMENT OF UM/UIM BENEFITS**
       Our Client/Insured   : Sara Iqbal
       Our File No.         : 200964 – RCB
       **Claim Number**     **: 53–21D1–58H**
       Date of Accident     : June 18, 2021

Dear Mr. Dauper:

       As you know, this law firm represents Mrs. Sara Iqbal for her personal injury claim
arising from the automobile collision on June 18, 2021. GEICO insures Emily Santiago, the
driver who caused this collision. It is my understanding you are the adjuster assigned by **State
Farm Mutual Insurance Company (hereinafter State Farm)** to handle the UM/UIM
(underinsured motorist) claim. If you are not, please immediately forward this letter to the
UM/UIM adjuster assigned to this case.

       On February 22, 2022, **State Farm** gave permission to settle Mrs. Sara Iqbal's 3rd party
claim with GEICO for an amount within their bodily injury limits. On October 7, 2022, GEICO
offered an amount within their policy limits. *Please see the attached letter from GEICO.*

## LIABILITY

       According to the enclosed Texas Peace Officer's Crash report, the investigating officer
and the witness at the scene placed fault for the crash on Ms. Emily Santiago. Ms. Santiago's
inattention, failure to control speed, faulty evasive action and failure to drive in a single lane
caused the crash.

| | Unit Num. | Psn. Num. | Charge | Citation/Reference Num: |
|---|---|---|---|---|
| CHARGES | 1 | 1 | FAILURE TO YIELD RIGHT OF WAY/UNSAFE LANE CHANGE | 21-06-3337 |

*(Texas Peace Officer's Crash Report – Page 2 of 2)*

| | 36 Contributing Factors (Investigator's Opinion) | | | | |
|---|---|---|---|---|---|
| | Unit # | Contributing | | | May Have Contrib. |
| FACTORS & CONDITIONS | 1 | 4 | 60 | 20 | |

*(Texas Peace Officer's Crash Report – Page 2 of 2)*

Page 2 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H / Our Client: Sara Iqbal**
Date of Accident: June 18, 2021

| Investigator's Narrative Opinion of What Happened |
|---|
| (Attach Additional Sheets if Necessary) |
| UNIT 1 ATTEMPTED TO PASS UNIT 2 STRIKING UNIT 2 CAUSING HEAVY DAMAGE TO UNIT 1 AND MINOR DAMAGE UNIT 2. BOTH UNITS CAME TO A STOP IN #3 LANE BLOCKING TRAFFIC. UNIT 1 TOWED BY JJ TOWING DRIVER UNIT 1 CITED. PASSENGER UNIT 2 TRANSPORTED TO RESOLUTE BY NBEMS. UNIT 2 DRIVEN FROM SCENE. |

*(Texas Peace Officer's Crash Report – Page 2 of 2)*



*(Iqbal's Vehicle)*



Field Diagram - Not to Scale

*(Texas Peace Officer's Crash Report – Page 2 of 3)*

## THE HARMS & LOSSES OF THE COLLISION

  Enclosed is a CD containing medical records, billing records, video of the collision as well as a summary of bills. As of today, Mrs. Sara Iqbal incurred medical expenses to **$44,834.00.**

  Mrs. Iqbal was treated at the scene by EMS and was transferred to Resolute Health Hospital for injuries to her neck and back along with numbness to her legs. Due to constant neck, right shoulder and back pain radiating to right arm and into her legs Sara Iqbal had follow up medical treatment at Pro Care Medical Center attributable to her continued symptoms, MRIs were ordered.

Page 3 of 10
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: Sara Iqbal
Date of Accident: June 18, 2021

Her brain MRI revealed punctate T2/Flair hyperintensities within the subcortical white matter of the right frontal lobe.

> **IMPRESSION:**
>
> 1. Few, punctate, T2/FLAIR hyperintensities within the subcortical white matter of the right frontal lobe without restriction on diffusion weighted images. With the history of trauma, the differential would include non-hemorrhagic traumatic axonal injury (TAI). Correlate clinically.

*(Pro Care Medical Center, Medical Affidavit Bate No. 081)*

Her thoracic MRI revealed posterior subligamentous disc extrusion at T3-T4 measuring at 5mm with 4-5 of caudal migration.

> **IMPRESSION:**
>
> 1. Alignment of the spine is unremarkable. There is no acute fracture, segmental instability or cord contusion.
>
> 2. At T3-T4, there is a posterior, subligamentous disc extrusion, central in location, measuring 5 mm, with 4-5 mm of caudal migration, which impinges upon the thecal sac, reaching and impinging / deforming the ventral cord, without narrowing of the neural foramina. There is moderate spinal stenosis.
>
> In comparison to MRI of the cervical spine on 07/26/2016, there has been interval development of a disc extrusion at the T3-T4 level, as described above.

*(Pro Care Medical Center, Medical Affidavit Bate No. 077-078)*

Her right shoulder MRI revealed rotator cuff.

> **IMPRESSION:**
>
> 1. Supraspinatus interstitial tears, mild.
>
> 2. Intramuscular ganglion cyst in the infraspinatus muscle belly extending towards the musculotendinous junction, very likely secondary to an interstitial tear.
>
> 3. Infraspinatus tendon interstitial tears at its tendinous insertion, mild.
>
> 4. Mild tendinosis of long head of biceps tendon in its intraarticular course.
> 5. Mild hypertrophic changes at acromioclavicular joint, causing indentation of supraspinatus fat. The glenoid has a Type I morphology. The acromiohumeral distance is maintained.
>
> In comparison to MRI of the right shoulder on 07/26/2016, there has been interval development of interstitial tears of the supraspinatus and infraspinatus tendons, at their tendinous insertion.
> There has been development of an intramuscular ganglion cyst within the infraspinatus muscle belly, very likely secondary to an underlying interstitial tear of the infraspinatus muscle.

*(Pro Care Medical Center, Medical Affidavit Bate No. 079-080)*

Her lumbar MRI revealed disc bulge at L3-L4 and L4-L5 broad based disc protrusion subligamentous disc herniation.

| IMPRESSION: |
| --- |
| 1. Alignment of the spine is unremarkable. There is no acute fracture or segmental instability. |
| 2. At L3-L4, there is a 3 mm disc bulge, which impinges upon the anterior thecal sac with mild narrowing of the bilateral neural foramina. |
| 3. At L4-L5, there is a broad-based disc protrusion-subligamentous disc herniation, measuring 5 mm, which impinges upon the anterior thecal sac and bilateral traversing L5 nerve roots. There is moderate spinal stenosis. There is moderate narrowing of the bilateral neural foramina with contact/impingement of the right exiting L4 nerve root. |
| In comparison to MRI of the lumbar spine on 12-03-2016, there has been interval progression/ worsening with disc herniation at the L4-L5 level currently measuring 5 mm in AP length, previously measuring 4 mm. |

*(Pro Care Medical Center, Medical Affidavit Bate No. 082-083)*

Unfortunately, Mrs. Iqbal underwent extensive months of medical care including pain management treatment of two (2) lumbar ESI injection with minimal improvement.

INTERVENTIONAL PAIN PROCEDURE - 02-18-2022
PATIENT: Iqbal, Sara                    SEX: Female
DOB: 04-13-1968                         AGE: 53 year
BMI: 33
RENDERING: Johnny White, M.D.
PRE/POST OP DX:
S33.0XXA Traumatic rupture of lumbar intervertebral disc, initial encounter
M51.9 Disc disorder of lumbar region
PROCEDURE: Lumbar Interlaminar Epidural Steroid Injection
CPT: Njx interlaminar Lmbr/sac (62323) , Epidurography (72275-26)
CONSENT: Patient has been presented with information pertaining to this procedure and is a[...] include, but not limited to potential damage to any and all body organs including possible blee[...] and headache. She has agreed to proceed. Operative consent was obtained.
PATIENT POSITION: Prone position on the procedure table.
TIMEOUT: A JCAHO mandated "time-out", confirming correct patient, procedure and procedure location was performed.
SEDATION: Oral Anxiolysis - triazolam.
PREP: Chloraprep
GUIDANCE: The target area was visualized fluoroscopically. Target site entry points were visualized and marked.
PROCEDURE DETAIL: The skin and subcutaneous tissues overlying the target site was infiltrated with 1% lidocaine. A 20G 3.5 inch tuohy needle was directed down towards the target lamina inferior to the interlaminar space. The needle was then advanced anteriorly, transiting the ligamentum flavum into the epidural space using a loss of resistance to air technique. Upon loss of resistance, lumbar epidurography was performed. Iohexal contrast was injected. Epidural spread was noted with no evidence of intrathecal or intravascular uptake. Spread was noted cover the intended levels of concern. After verification of epidural spread and negative aspiration, 5 mls of a solution containing  40 mg triamcinolone in 0.25% bupivacaine was injected. The needle was removed intact.
TARGET SITE: L4-L5
SPREAD RANGE: L4-L5 and L5-S1
PROCEDURE DISPOSITION: The patient was discharged home. Post-procedure instructions are provided. She is advised to call the office if problems should arise. Follow-up appointments have been previously communicated to the patient.
COMPLICATION(S): None.
COMMENT(S):

Johnny White, M.D.

*(Pro Care Medical Center, Medical Affidavit Bate No. 099)*

Page 5 of 10
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: Sara Iqbal
Date of Accident: June 18, 2021



Transforaminal
epidural steroid
injection to
level L5-S1

**INTERVENTIONAL PAIN PROCEDURE** - 06-09-2022
**PATIENT:** Iqbal, Sara                                    **SEX:** Female
**DOB:** 04-13-1968                                          **AGE:** 54 year
**RENDERING:** Johnny White, M.D.
**PRE/POST OP DX:**
S33.0XXA Traumatic rupture of lumbar intervertebral disc, initial encounter
M51.9 Disc disorder of lumbar region
**PROCEDURE: Lumbar Transforaminal Epidural Steroid Injection - Left**
CPT: Njx Aa&/strd T frm Epi L/s 1 (64483) ; (64484) Epidurography (72275)
**CONSENT:** Patient has undergone the educational process with this procedure, is aware and fully understands the risks involved to include, but not limited to potential damage to any and all body organs including possible bleeding, infection, and nerve injury, allergic reaction and headache. She also understands that the procedure will be undertaken in a safe, controlled and monitored setting. Patient recognizes that the desired benefits include enhanced function, relief from pain and reduction in the oral use of medications. Patient agreed to proceed. Operative consent was thus obtained.
**INDICATIONS/MEDICAL NECESSITY:** The patient presents for scheduled/requested Lumbar Transforaminal Epidural Steroid Injection.
**PATIENT POSITION:** Prone position on the procedure table.
**TIMEOUT:** A JCAHO mandated "time-out", confirming correct patient, procedure and procedure location was performed.
**ANESTHESIA:** Monitored anesthesia care was administered by CRNA/anesthesiologist
**PREP:** ChloraPrep
**GUIDANCE:** The target area was visualized fluoroscopically. Target site entry points were visualized and marked.
**APPROACH:** Sub-Pedicular (supraneural)
**PROCEDURE DETAIL:** The skin and subcutaneous tissues overlying each target site was infiltrated with 1% xylocaine. At each target site, 22 gauge 3 1/2 inch slightly angled spinal needle(s) were directed down towards the inferior medial aspects of the transverse processes and then manipulated inferiorly over the edge and rotated into the neuroforamen. At S1, the needle was directed into the S1 posterior foramen and directed towards the medial aspect of the S1 pedicle. Transforaminal epidurography was performed. After verification and negative aspiration, no irrigation was performed. Following, 5 mg Dexamethasone in 2.5 mls 0.25% bupivacaine was injected at each site. The needle(s) were removed intact.
**TARGET SITE(S):** Left: L5-S1 (L5 NERVE) and S1 (S1 NERVE)
**PROCEDURE DISPOSITION:** The patient was transported to the post-anesthesia care area. She is advised to assess the diagnostic/therapeutic benefits of the injections during the anesthetic phase of effect and record findings in the supplied pain diary. She will be discharged home after appropriate monitoring and having met discharge criteria. Post-procedure instructions are provided. She is advised to call the office if problems should arise. Follow-up appointments have been previously communicated to the patient.
**COMPLICATION(S):** No.
**COMMENT(S):**

*Johnny L. White, M.D.*

Johnny White, M.D.
*This has been electronically signed by Johnny White, M.D. on 08-09-2022*

*(Pro Care Medical Center, Medical Affidavit Bate No. 103)*

Subsequently Sara Iqbal was referred to orthopedic surgeon, Dr. Frank Schroeder. Dr. Schroeder impression of the right shoulder displays a rotor cuff and recommends steroid injection.

Page 6 of 10
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: Sara Iqbal
Date of Accident: June 18, 2021

---

# Creedmoor Orthopedics
## Frank Schroeder, D.O
### Board Certified Orthopedic Surgeon

Sara Iqbal
Page: 3

The patient has a negative compression rotation test. She has a markedly positive impingement sign. She has tenderness over the long head of the biceps tendon and to a lesser degree over the lateral acromion. She has a positive impingement maneuver. She has a positive supraspinatus test. She has positive Yergason's test. She has no evidence of glenohumeral instability anteriorly, posteriorly or inferiorly. Drop arm test is negative.

IMPRESSION
1. Rotator cuff tendinitis.
2. Tendinitis of long head of biceps tendon right shoulder.
3. Interstitial tears rotator cuff.

RECOMMENDATION
1. Subacromial steroid injection. This is done with informed consent using 80 mg Depo-Medrol plus 2 ml of 0.5% plain Marcaine. A topical anesthetic was used with alcohol prep. The patient tolerated the injection well.
2. I have given the patient note to allow resumption of physical therapy for the right shoulder.
3. Return to clinic in three to four weeks for reevaluation. She will call sooner p.r.n.

Frank Schroeder, D.O.

---

## EMILY SANTIAGO WAS UNINSURED AT THE TIME OF THE COLLISION

At the time of the collision the vehicle operated by Emily Santiago was an underinsured motorist. Ms. Santiago only carried a $30,000 per policy limits. Please see a copy of Geico's letter dated December 15, 2022.

## DEMAND FOR UM/UIM POLICY LIMITS

I have now provided **State Farm** with copies of all items and documents necessary for it to accept or reject Mr. Pasha Iqbal's uninsured motorist (UM/UIM) claim. You have not asked me for any items not already produced.

This letter shall serve as a demand for **State Farm** to pay Pasha Iqbal the **State Farm uninsured motorist policy** (UM/UIM policy) limits within the time allowed by law.

## NOTICE OF EXTRA CONTRACTUAL DAMAGES
## IN THE EVENT USAA FAILS TO TIMELY PAY THE FULL AMOUNT
## OF THE UM/UIM BENEFITS

As of the date of this letter, **State Farm** has been provided with copies of all items and documents necessary for it to accept or reject Pasha Iqbal's uninsured motorist (UM) claim. See below index page.

There is no conflicting medical or lay evidence that the motor vehicle collision was caused by anyone other than Emily Santiago. There is no evidence that the medical injuries were caused by anything else but the subject motor vehicle collision. There is no conflicting medical evidence that Mr. Pasha Iqbal will not require the future medical care described above and in the medical records provided. Thus, the liability and damages are "**reasonably clear**" as there is no expert evidence supporting any other conclusion.

Pursuant to Texas common law, the Supreme Court has made it clear that a <u>first party insurer</u> (i.e. **State Farm**) can be liable for common law bad faith and insurance code violations when it fails to pay a claim that has become "**reasonably clear**". ***Universal Life Ins. V. Giles***, 950 SW2d 48, 56(Tex.1997), ***State Farm Fire & Cas. Co. v. Simmons***, 963 SW2d 42, 44 (Tex.1998).

Since **State Farm** is Pasha Iqbal's insurer, **State Farm** has a <u>legal and fiduciary duty</u> from the day it received notice of the claim to pay the claim when and if it is becomes "**reasonably clear**". That is the law pure and simple.  And as stated above, it is "**reasonably clear**" that **State Farm** owes Pasha Iqbal the full amount of the UM/UIM policy benefits, and owes it now because Pasha Iqbal's damages far exceed the sum of available limits.

If **State Farm** refuses to pay the UM policy benefits, due to the cost of future medical care, due to the lengthy post-treatment recovery time, and due to his limited finances, Mr. Iqbal will have to delay having future medical care that he needs until after he files suit seeking UM benefits from **State Farm** and takes the suit to a jury verdict. This process may take approximately 1-2 years, and therefore **State Farm** will be forced to live with additional pain and suffering while waiting to have future medical treatment(s), and this additional pain and suffering will be caused by **USAA's** own conduct of <u>refusing to timely pay</u> the UM benefits even though the facts are "**reasonably clear**" and undisputed. Because **State Farm** owes a fiduciary duty to Pasha Iqbal, if it refuses to tender its UM policy limits it will be a breach of the duty of good faith and fair dealing, and will be a violation of numerous unfair settlement practices, including the following, to wit:

(1) Not attempting in good faith to bring about a prompt, fair and equitable settlement of a claim once the insurer's liability becomes **reasonably clear.** <u>Tex. Ins. Code §541.060 (a) (2) (A)</u>

(2) attempting to pressure the claimant to settle a claim under one portion of the coverage by refusing to bring about a prompt, fair and equitable settlement under a second portion of the coverage, once the insurer's liability on the second portion becomes reasonably clear. <u>Tex. Ins. Code §541.060 (a) (2) (B)</u>

(3) Not promptly giving a policyholder a reasonable explanation, based on the policy as it relates to the facts or applicable law, for the insurer's denial of a claim or for the offer of a compromise settlement of a claim. <u>Tex. Ins. Code §541.060 (a) (3)</u>

(4) Not completing either of the following within a **reasonable time**:

    a.  Affirming or denying coverage of a claim to a policyholder; and
    b.  submitting a reservation of rights to a policyholder .<u>Tex. Ins. Code §541.060 (a) (4) (A-B)</u>

(5) refusing, failing to make, or unreasonably delaying an offer of settlement under applicable first party coverage on the basis that other coverage may be available or that third parties are responsible for the damages suffered, except as specifically provided in the policy. <u>Tex. Ins. Code §541.060 (a) (5)</u>

(6) refusing to pay a claim without conducting a reasonable investigation. <u>Tex. Ins. Code §541.060 (a) (7)</u>

(7) for Texas personal auto policies, delaying or refusing settlement of a claim solely because there is other insurance of a different type available to satisfy all or part of the loss. Tex. Ins. Code §541.060 (a) (8)

If **State Farm** fails to pay the UM policy limits within the time specified in this letter, this is notice to **State Farm** that it will be sued for violations of some or all of the above provisions. Please be aware that under the common law, in an action for bad faith, the insured can recover actual damages for economic or personal injuries. ***Pena v. State Farm Lloyds***, 980 S. W. 2D9 49, 958 (Tex. App.—— Corpus Christi, 1998, no pet). An insured can also recover mental anguish damages. ***Giles***, 950 S. W. 2D at 54. Under the Texas Insurance Code, an insured can recover his or her actual damages, including damages for economic loss, policy proceeds, and damages for personal injury. Additionally, an insured can recover damages for mental anguish when there is a finding that the defendant acted knowingly. ***State Farm Life Ins. v. Beaston***, 907 S. W. 2D 430, 436 (Tex. 1995). Under both the common law and the Texas Insurance Code, the insured can recover exemplary damages and additional damages. Under the Texas Insurance Code the damages that are allowed may be up to three times the amount of the actual damages. <u>Tex. Ins. Code §541.152 (B)</u>.

Should **State Farm** fail to pay the policy limits within the time specified within this letter, Mr. Pasha Iqbal will seek the following economic losses from **State Farm** in addition to the policy benefits:

(1) the difference in the amount of attorney's fees at the present time and attorney's fees in the event of trial;

(2) Additional case and litigation expenses which are expected to be approximately $15,000.00-$20,000.00. Your failure to pay the claim will likely result in unnecessary deposition fees and expert fees from medical providers that otherwise would not have to be incurred;

Page 9 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H** / Our Client: **Sara Iqbal**
Date of Accident: June 18, 2021

   (3) Personal injury damages to the insured resulting from the inability to obtain additional medical care to the extent they caused additional injury;

   (4) mental anguish and pain and suffering damages incurred because of the delay in receiving treatment that otherwise would have been obtained but for the failure of **State Farm** to pay the UM policy limits.

     All of the elements of damages itemized above would be a direct result of **State Farm's** refusal or delay in timely paying the full amount of the UM claim. Additionally, since there is no reasonable basis to deny the UM claim, we would seek exemplary damages or treble damages as allowed by statute. In addition to that, we would seek our reasonable attorney's fees for the additional work required in addressing these violations.

     This letter shall serve as a formal demand for payment the payment in full of the **State Farm** UM policy limits within the time allowed by law.

     Please contact me after you have had a chance to review the medical. I look forward to working with you to resolve this claim in an amicable manner. Thank you for your attention in this matter.

           Sincerely yours,

           *R. Craig Bettis / CR*

           R. CRAIG BETTIS

RCB/er
Enclosures As State on Pag 10 of 10

Page 10 of 10
Mr. Todd Dauper
**Claim No.: 53–21D1–58H** / Our Client: **Pasha Iqbal**
Date of Accident: June 18, 2021

## *ENCLOSURES ON CD JANUARY 11, 2023*

1. CD;
2. Texas Peace Officer's Crash Report
3. Video
4. Summary of Medical Bills
5. City of New Braunfels EMS – Medical Affidavit (Bates No. 01-07)
6. City of New Braunfels EMS – Billing Affidavit (Bates No. 01-02)
7. Resolution Health Hospital, Medical Affidavit (Bates No. 001-048)
8. Resolution Health Hospital, Billing Affidavit (Bates No. 01)
9. E-Merge Physicians, Billing Affidavit (Bates No. 01)
10. M&S Radiology, Billing Affidavit (Bates No. 01)
11. Pro Care Medical Center, Medical Affidavit (Bates No. 001-115)
12. Pro Care Medical Center, Billing Affidavit (Bates No. 001-008)

# EXHIBIT 8

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 State Farm®

January 23, 2023

The Law Offices Of Tyler & Peery          State Farm Claims
5822 W Ih 10                               PO Box 106171
San Antonio TX 78201-2851                 Atlanta GA 30348-6171

RE:   Your Client(s):      Pasha M Iqbal
      Claim Number:        53-21D1-58H
      Date of Loss:        June 18, 2021
      Our Insured:         Pasha M Iqbal
      Policy Number:       262668353O

To Whom It May Concern:

We are reviewing Pasha M Iqbal's claim for underinsured motorist injury benefits arising from
the above-referenced loss. In order to assist us in our review and evaluation, we need additional
information from you to secure final proof of loss.

Specifically, please provide us with the following information:

- All medical records from your client's injury auto accident of 1/3/2018.
- All medical records from your client's primary care physician for the time period of
  January 1, 2018 to January 23, 2023.
- We may request a utilization review or independent medical exam.

If you have any further information you would like us to consider, please forward it to our
attention as soon as possible.

Please contact us should you have any further questions or concerns regarding this claim.
Thank you for your cooperation.

DUE TO PROTECTION OF PRIVACY OBLIGATIONS AND INTERNAL SYSTEM INTEGRITY, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY DOES NOT ACCEPT TIME-SENSITIVE OR ACTION-ORIENTED MESSAGES DELIVERED
VIA EMAIL THAT INVOLVE ACCESSING A CYBERLINK, APPLICATION, DIGITAL DROPBOX OR OTHER THIRD-PARTY
DOCUMENT SERVICE.

53-21D1-58H
Page 2
January 23, 2023

Sincerely,

Todd Dauper
Claim Specialist
(844) 292-8615 Ext. 335

State Farm Mutual Automobile Insurance Company

DUE TO PROTECTION OF PRIVACY OBLIGATIONS AND INTERNAL SYSTEM INTEGRITY, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY DOES NOT ACCEPT TIME-SENSITIVE OR ACTION-ORIENTED MESSAGES
DELIVERED VIA EMAIL THAT INVOLVE ACCESSING A CYBERLINK, APPLICATION, DIGITAL DROPBOX OR OTHER THIRD-
PARTY DOCUMENT SERVICE.

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

 StateFarm®

January 31, 2023

The Law Offices Of Tyler & Peery            State Farm Claims
5822 W Ih 10                                 PO Box 106171
San Antonio TX 78201-2851                    Atlanta GA 30348-6171

RE:    Your Client(s):      Sara Parveen Iqbal
       Claim Number:        53-21D1-58H
       Date of Loss:        June 18, 2021
       Our Insured:         Sara Parveen Iqbal
       Policy Number:       2626683530

To Whom It May Concern:

We are reviewing Sara Parveen Iqbal's claim for underinsured motorist injury benefits arising
from the above-referenced loss. In order to assist us in our review and evaluation, we need
additional information from you to secure final proof of loss.

Specifically, please provide us with the following information:

- All medical records from your client's auto injury accident of 6/1/2016.
- All medical records from your client's auto injury accident of 2/12/2016.
- All medical records from your client's prior right knee surgery.
- All medical records from your client's primary care physician for the time period of
  January 1, 2019 to January 31, 2023.
- We may request a utilization review or independent medical exam.

If you have any further information you would like us to consider, please forward it to our
attention as soon as possible.

Please contact us should you have any further questions or concerns regarding this claim.
Thank you for your cooperation.

DUE TO PROTECTION OF PRIVACY OBLIGATIONS AND INTERNAL SYSTEM INTEGRITY, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY DOES NOT ACCEPT TIME-SENSITIVE OR ACTION-ORIENTED MESSAGES DELIVERED
VIA EMAIL THAT INVOLVE ACCESSING A CYBERLINK, APPLICATION, DIGITAL DROPBOX OR OTHER THIRD-PARTY
DOCUMENT SERVICE.

53-21D1-58H
Page 2
January 31, 2023

Sincerely,


Todd Dauper
Claim Specialist
(844) 292-8615 Ext. 335

State Farm Mutual Automobile Insurance Company

DUE TO PROTECTION OF PRIVACY OBLIGATIONS AND INTERNAL SYSTEM INTEGRITY, STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY DOES NOT ACCEPT TIME-SENSITIVE OR ACTION-ORIENTED MESSAGES
DELIVERED VIA EMAIL THAT INVOLVE ACCESSING A CYBERLINK, APPLICATION, DIGITAL DROPBOX OR OTHER THIRD-
PARTY DOCUMENT SERVICE.

# EXHIBIT 9

John N. Tyler*  
Dennis C. Peery*  
James H. Shaffer*  
R. Craig Bettis



Robert C. Cowan, Jr.  
Of Counsel

February 17, 2023

Mr. Todd Dauper  
STATE FARM MUTUAL AUTO. INS. CO.  
P. O. Box 106171  
Atlanta, GA 30348

VIA EMAIL automedicalclaims@statefarm.com

RE:  Our Client/Insured : Pasha Iqbal  
Our File No. : 200963 – RCB  
**Claim Number** : **53–21D1–58H**  
Date of Accident : June 18, 2021

Dear Mr. Dauper:

In response to your correspondence dated January 23, 2023, I am providing you with the records we have on Mr. Iqbal and from the automobile accident of January 13, 2018, from the following providers:

1. Pro Care Medical Center (Chiropractic and Rehabilitation Medical Records)
   - Mr. Iqbal was seen at Pro Care Medical Center from January 5, 2018, through October 30, 2018.

2. American Health Imaging (MRI Medical Record)
   - The attached MRI report is of the left shoulder.

3. Dr. Manish Patel (Medical Records)
   - Left shoulder.

4. Pro Care Medical Center (Primary Care Medical Records)

Since we have provided you with the pre-existing records, we have relevant to your request, you have all the necessary information to accept or reject our demand in our letter dated, December 22, 2022. **We hereby reiterate our demand for the UM/UIM policy limits**.

I look forward to working with you to resolve this claim in an amicable manner. Thank you for your attention in this matter.

Sincerely yours,

*R. Craig Bettis / CR*  
R. CRAIG BETTIS

RCB/er  
Enclosures As State on Page 2 of 2.

5822 West IH 10 ▯ San Antonio, Texas 78201-2851 ▯ Phone (210) 340-0900 ▯ Fax (210) 736-9197  
www.tylerpeery.com  
*Board Certified ▯ Personal Injury Trial Law, Texas Board of Legal Specialization

Page 2 of 2
Mr. Todd Dauper
Claim No.: 53–21D1–58H / Our Client: Pasha Iqbal
Date of Accident: June 18, 2021

## *ENCLOSURES ON FEBRUARY 17, 2023*

*1)* ***Pro Care Medical Center, Chiro and Rehab Medical Bates No. 04000-04088;***
*2)* ***American Health Imaging, Medical Bates No. 07000;***
*3)* ***Pro Care Medical Center, Primary Care Medical Bates No. 09000-09008;***
*4)* ***Dr. Manish Patel, Medical Bates No. 02000-02003.***

## *ENCLOSURES ON CD DECEMBER 15, 2022*

1. CD;
2. Texas Peace Officer's Crash Report
3. Video
4. Summary of Medical Bills
5. Resolution Health Hospital, Medical Affidavit (Bates No. 001-040)
6. Resolution Health Hospital, Billing Affidavit (Bates No. 01)
7. M&S Radiology, Billing Affidavit (Bates No. 01)
8. Pro Care Medical Center, Medical Affidavit (Bates No. 001-083)
9. Pro Care Medical Center's, Surgical Report (Bates No. 13000)
10. Pro Care Medical Center, Billing Affidavit (Bates No. 01-08)
11. Creedmoor Othopedics, Medical Affidavit (Bates No. 001-020)
12. Creedmoor Othopedics, Billing Affidavit (Bates No. 01-02)
13. Dr. Adam Bruggeman, Medical Record (Bates No. 11000-11012)
14. Dr. Adam Bruggeman's, Surgical Report (Bates No. 10000)

# EXHIBIT 10

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



April 11, 2023

The Law Offices Of Tyler & Peery                    State Farm Claims
5822 W Ih 10                                         PO Box 106171
San Antonio TX  78201-2851                          Atlanta GA 30348-6171

Re:    Your Client(s):      Pasha M Iqbal
       Claim Number:        53-21D1-58H
       Our Insured:         Pasha M Iqbal
       Policy Number:       262668353O
       Date of Loss:        06/18/2021

To Whom It May Concern:

We have reviewed Pasha M Iqbal's claim for underinsured motorist injury benefits.  Based on
the information obtained to date, we are extending an offer of $1,000.00 in settlement of this
claim.

Once you notify us that your client accepts this offer, we will forward a payment draft to you
within five business days.  If this amount is not acceptable or if you have additional information
you would like us to consider, please forward it to our attention.

Thank you for your assistance in this matter.

Sincerely,

Todd Dauper
Claim Specialist
Phone: 972-907-7562
Fax:    (855) 820-6318

State Farm Mutual Automobile Insurance Company

# EXHIBIT 11

John N. Tyler\*†
Dennis C. Peery\*
James H. Shaffer\*†



R. Craig Bettis†
Mark A. Sutton



March 27, 2023

Mr. Todd Dauper
STATE FARM MUTUAL AUTO. INS. CO.
P. O. Box 106171
Atlanta, GA 30348

VIA EMAIL statefarmclaims@statefarm.com
VIA CM, RRR 7018 0680 0000 2431 4006

<table>
<tr><td>RE:</td><td>Our Client/Insured</td><td>: Pasha Iqbal</td></tr>
<tr><td></td><td>Our File No.</td><td>: 200963 – RCB</td></tr>
<tr><td></td><td><strong>Claim Number</strong></td><td><strong>: 53–21D1–58H</strong></td></tr>
<tr><td></td><td>Date of Accident</td><td>: June 18, 2021</td></tr>
</table>

Dear Mr. Dauper:

I am in receipt of your two-letter dated March 6, 2023, but oddly received on today, March 27, 2023, offering settlement of $1,000.00 for Pasha Iqbal's above referenced claim. **Please be advised that your offer is rejected**. This letter shall server as notice that it does not appear the State Farm letters were post-marked on March 6, 2023.

Additionally, I am not sure why a check for $1,000.00 was mailed with your offer. I am returning the check (Check No. 1 25 474608, dated March 6, 2023) as State Farm's offer of settlement is rejected.

Please note State Farm's prior dealings with our firm (*see State Farm Mut. Automobile Ass'n. v. Cook*, 591 S.W.3d 677 (Tex. App.—San Antonio, 2019)). State Farm has a fiduciary duty to its insured/our client to include conducting a reasonable investigation of her claims, and to make a good faith offer of settlement to resolve the claim. **Making an unreasonably low offer of settlement in the UM context is a violation of this fiduciary duty owed to your insured.**

To avoid having to pay my client's reasonable and necessary attorney's fees, as well as paying damages to my client for breach of the duty of good faith and fair dealing, I once again demand you tender the UM bodily injury policy limits of $50,000.00 **to fully compensate my client** for his injuries sustained in the subject incident within the time period allowed by law.

If you have any questions, please do not hesitate to contact me.

Sincerely yours,

*R. Craig Bettis / CR*

R. CRAIG BETTIS

RCB/er
Enclosures: As Stated.

| | |
|---|---|
| PAYMENT NO | 1 25 474608 J |
| PAYMENT AMOUNT | $1,000.00 |
| ISSUE DATE | 03-06-2023 |
| AUTHORIZED BY | DAUPER, TODD |
| PHONE | (844) 292-8615 |

| | |
|---|---|
| CLAIM NO | 53-21D1-58H |
| LOSS DATE | 06-18-2021 |
| POLICY NO | 2626-683-53O |
| INSURED | IQBAL, PASHA M & SARA P & |

**THE LAW OFFICES OF TYLER & PEERY**
**5822 W IH 10**
**SAN ANTONIO TX  78201-2851**

REMARKS   ADVANCED PAYMENT/INITIAL OFFER

| COVERAGE DESCRIPTION | ON BEHALF OF | AMOUNT |
|---|---|---|
| UNDERINSURED BODILY INJURY | IQBAL, PASHA | 1,000.00 |

## RETAIN STUB FOR RECORDS

**StateFarm** STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY            1 25 474608 J
AUTO INJURY                                                         JPMORGAN CHASE BANK, NA  56-1544/441
INJ D1 OFFICE DA   PAGECNTQ P74                                     COLUMBUS, OH

CLAIM NO 53-21D1-58H          INSURED IQBAL, PASHA M & SARA P &                              03-06-2023
LOSS DATE 06-18-2021                                                                        DATE  M M D D  Y Y Y Y

***********************EXACTLY ONE THOUSAND AND 00/100 DOLLARS           $*****1,000.00

Pay to the
Order of: **THE LAW OFFICES OF TYLER & PEERY & PASHA M. IQBAL**

*Michael F Tipton*
AUTHORIZED SIGNATURE

*Jon C Farney*
AUTHORIZED SIGNATURE

SECURED DOCUMENT WATERMARK APPEARS ON BACK, HOLD AT 45° ANGLE FOR VIEWING

⑈25174746O8⑈ ⑆O44115443⑇      6271192O9⑈

3-27-23
vm

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*

  **StateFarm**®

March 06, 2023

The Law Offices Of Tyler & Peery          **State Farm Claims**
5822 W Ih 10                              PO Box 106171
San Antonio TX  78201-2851               Atlanta GA 30348-6171

Re:    Your Client(s):      Pasha M Iqbal
       Claim Number:        53-21D1-58H
       Our Insured:         Pasha M Iqbal
       Policy Number:       262668353O
       Date of Loss:        06/18/2021

To Whom It May Concern:

We have reviewed Pasha M Iqbal's claim for underinsured motorist injury benefits.  Based on the information obtained to date, we are extending an offer of $1,000.00 in settlement of this claim.

Once you notify us that your client accepts this offer, we will forward a payment draft to you within five business days.  If this amount is not acceptable or if you have additional information you would like us to consider, please forward it to our attention.

Thank you for your assistance in this matter.

Sincerely,

Todd Dauper
Claim Specialist
Phone: (844) 292-8615 Ext. 335
Fax:    (855) 820-6318

State Farm Mutual Automobile Insurance Company

## Automated Certificate of eService

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Estevan Rocha on behalf of Craig Bettis
Bar No. 24040518
steven@tylerpeery.com
Envelope ID: 75244417
Filing Code Description: Petition
Filing Description:
Status as of 5/3/2023 8:07 AM CST

Associated Case Party: Sara  Iqbal

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| R. CraigBettis | | cbettis@tylerpeery.com | 5/2/2023 4:31:31 PM | SENT |

Associated Case Party: Pasha  Iqbal

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| R. CraigBettis | | cbettis@tylerpeery.com | 5/2/2023 4:31:31 PM | SENT |

**CAUSE NO. 2023CI08776**

| | | |
|---|---|---|
| **PASHA IQBAL** | § | **IN THE DISTRICT COURT** |
| **AND SARA IQBAL** | § | |
|     *Plaintiff*, | § | |
| | § | |
| **VS.** | § | **150TH JUDICIAL DISTRICT** |
| | § | |
| **STATE FARM MUTUAL AUTOMOBILE** | § | |
| **INSURANCE COMPANY AND STATE** | § | |
| **FARM, AN ASSUMED OR COMMON** | § | |
| **NAME** | § | |
|     *Defendant*. | § | **BEXAR COUNTY, TEXAS** |

## DEFENDANT STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY'S ORIGINAL ANSWER

Defendant State Farm Mutual Automobile Insurance Company (hereafter "Defendant") hereby files its Original Answer and would respectfully show the Court as follows:

### I.    GENERAL DENIAL

Defendant generally denies each and every allegation contained in Plaintiff's Original Petition pursuant to Rule 92 of the Texas Rules of Civil Procedure, and any subsequent amendments thereof, pursuant to Rule 92, and demands strict proof thereof by a preponderance of the credible evidence.

### II.    CONDITIONS PRECEDENT

Defendant specifically denies that all conditions precedent to recover under the automobile insurance policy at issue have occurred.[1] At the time Plaintiff filed suit, Plaintiff had not established the liability of the alleged tortfeasor driver, the uninsured and/or underinsured status of the tortfeasor driver, and/or an amount of damages resulting from the accident.

---

[1] *See, e.g., Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006).

1

### III.    RULE 193.7 NOTICE

Pursuant to Rule 193.7 of the Texas Rules of Civil Procedure, Defendant hereby notifies Plaintiff and her counsel that it intends to use documents that Plaintiff produces and/or have produced in response to written discovery in this lawsuit against Plaintiff in any pre-trial proceeding and/or at trial and intends to rely upon the self-authentication provisions of Rule 193.7.

### IV.    JURY DEMAND

Defendant demands a jury trial in accordance with the Texas Rules of Civil Procedure and the Local Rules of this jurisdiction.

### V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant State Farm Mutual Automobile Insurance Company respectfully prays for a judgment that Plaintiff takes nothing, that Defendant recover all its costs, and that Defendant be granted all other relief, at law and in equity, to which it may be justly entitled.

Respectfully submitted,

LINDOW ▪ STEPHENS ▪ SCHULTZ LLP

By:    Margaret F. Brown
State Bar No. 24092181
One Riverwalk Place
700 N. St. Mary's Street, Suite 1700
San Antonio, Texas 78205
(210) 227-2200 (telephone)
(210) 227-4602 (facsimile)
mbrown@lsslaw.com

*Counsel for Defendant State Farm Mutual Automobile Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Defendant State Farm Mutual Automobile Insurance Company's Original Answer was served by electronic service on the **26**[th] day of **May 2023**, upon the following counsel of record:

R. Craig Bettis
**TYLER & PEERY**
5822 WEST IH-10
San Antonio, TX 78201
**cbettis@tylerpeery.com**

_____
Margaret F. Brown